IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

JASON STOCKLEY,                            )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )          Cause No.  4:18-cv-00873-CAS
                                           )
JENNIFER M. JOYCE, et al                   )
                                           )
            Defendants.                    )

## DEFENDANT JENNIFER M. JOYCE'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS

Defendant Jennifer M. Joyce was, as Plaintiff alleges, at all times relevant to the allegations in the First Amended Complaint, the Circuit Attorney of the City of St. Louis.  Every allegation against Joyce and the Office of the Circuit Attorney is based on acts they performed in prosecuting Plaintiff.   Prosecutors, however, are entitled to "absolute immunity for acts performed in initiating a prosecution and in presenting the State's case."  *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) (emphasis added).  Plaintiff's effort to recast the prosecutor's conduct into unspecified unconstitutional *Monell* "policies or customs" fails for that same reason and the additional reason that Plaintiff's entire theory is that the Circuit Attorney prosecuted him for Mr. Smith's murder precisely because there was *not* a policy or custom of prosecuting officers for such crimes.  Plaintiff cannot have it both ways.  Finally, Plaintiff fails to state a claim for defamation because he has not pled the defamatory statement, because a prosecutor's statement that evidence supported a charge cannot be defamatory and, in any event, Joyce and the Office are protected by sovereign immunity.  All of Plaintiff's claims against Joyce and the Office of the Circuit Attorney should be dismissed.

## I.      Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly* 550 U.S. at 557).

As this Court recognized in addressing a § 1983 case, *Iqbal* requires a two-step inquiry when assessing whether a party has sufficiently pled a plausible cause of action:

> First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. These include legal conclusions and threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements.

> Second, the Court must determine whether the complaint states a plausible claim for relief. This is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. The plaintiff is required to plead facts that show more than the mere possibility of misconduct. The Court must review the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred.

2

*Burnett v. St. Charles Cnty. Jail*, No. 4:13-CV-1990-JAR, 2014 WL 1116751, at *1 (E.D. Mo. Mar. 20, 2014) (quoting *Iqbal*, 556 U.S. 662) (citations, alterations, and quotation marks omitted).

## II.   Discussion

Whether sued in her official or personal capacity, Joyce is entitled to immunity under all claims.   In the caption of this suit, Plaintiff has named Joyce "in her the City of St. Louis, Missouri, and individually" (sic).   Joyce will assume for purposes of this Motion that she is named in her individual and official capacities.   Count I, under § 1983, is brought "Against All Defendants," Count II is brought under § 1983 (*Monell*) "Against City of St. Louis and Jennifer Joyce," and Count III for defamation is brought "Against Defendant Jennifer Joyce Individually and in her capacity as former Circuit Attorney of the City of St. Louis."   While the language used in the Complaint is vague, "the distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.'"   *Hafer v. Melo*, 502 U.S. 21, 27 (1991).   The distinction imposes different burdens and offers different defenses.

A suit brought against Joyce in her official capacity is treated as a suit against her employer, in this case the Office of the Circuit Attorney to which she was elected.   *Id.* at 25; section 56.430 RSMo.   As to claims for official liability, this Motion is brought on behalf of the Office of the Circuit Attorney, a creature of state statute that is a county position and not an agency of the City of St. Louis, which was separately named in the suit.   To state a § 1983 claim against an official in her "official capacity," the entity's "policy or custom must have played a part in the violation of federal law."   *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   Under an official-capacity action, the official is entitled to sovereign immunity, such as is available under the Eleventh Amendment.   *Id.* at 167.   An official sued in her personal capacity is sued for

3

deprivation of a federal right by an official acting under color of state law. *Id.* at 166. When sued in her personal capacity, an official is entitled to personal immunity defenses such as absolute and qualified immunities. *Id.* at 166-67.

Joyce is entitled to absolute immunity for the actions and inactions that Plaintiff alleges in the First Amended Complaint ("Complaint") related to Plaintiff's prosecution. "A prosecutor enjoys absolute immunity for acts performed 'in initiating a prosecution and in presenting the State's case.'" *Reasonover*, 447 F.3d at 579 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). Plaintiff admits this *in the Complaint itself*: "Ms. Joyce . . . [is] absolutely immune from civil liability for certain actions and omissions attributed to them in this complaint. That absolute immunity protects the defendants even though they engaged in the conduct alleged, maliciously, dishonestly, and with no legal or justifiable purpose." Doc. #15 at ¶87. A careful examination of Plaintiff's allegations demonstrates that they all ultimately relate to Joyce's actions as Circuit Attorney, or the actions of others in that Office, in deciding to prosecute Plaintiff for Mr. Smith's death and the actions taken in implementing that decision.

### A. Joyce is absolutely immune from liability for Plaintiff's prosecution, regardless of her motivation.

In paragraphs 17-24 of the Complaint, Plaintiff alleges that Joyce decided to bring charges against Plaintiff after activist protests at her home and at City Hall.[1] Plaintiff alleges that Joyce informed activists that Plaintiff would be charged and asked that "they tone down demonstrators." Doc. #15 at ¶20. Joyce denies that there was any political motivation in the decision to charge Plaintiff. Regardless of the motivation, however, Joyce is entitled to absolute immunity in choosing to prosecute Plaintiff. *Holland v. County of Macomb*, 2017 WL 3391653,

---

[1] These paragraphs also reference the allegedly defamatory statement that Joyce said there was "new evidence" in Plaintiff's case. Those allegations are addressed in the section of this Memorandum addressing defamation.

at *2 (6th Cir. March 17, 2017) ("The motives of a prosecutor in initiating prosecution are irrelevant for purposes of immunity.") (affirming dismissal); *Jackson v. Capraun*, 534 Fed. Appx. 854, 859 (11th Cir. 2013) ("[A prosecutor] is entitled to absolute immunity for initiating the prosecution even if he did it with malicious intent.") (affirming dismissal); *Shmueli v. City of New York*, 424 F.3d 231, 237-38 (2d Cir. 2005) ("Once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive.") (reversing denial of motion to dismiss).

In *Bernard v. County of Suffolk*, the plaintiffs accused police and prosecutors of "misusing and conspiring to misuse their public offices and the judicial process for political purposes by investigating and prosecuting plaintiffs without probable cause." 356 F.3d 495, 498 (2d Cir. 2004). Plaintiffs alleged that defendants "disregarded exculpatory evidence" and "were aware that inculpatory evidence was manufactured and/or contrived." *Id.* at 499. The district court found that pursuing prosecutions without probable cause and engaging in misconduct before the grand jury for a political motive "would remove [the prosecutors'] conduct from the scope of official duties shielded by absolute immunity." *Id.* at 503. The Second Circuit reversed the district court, holding that "regardless of defendants' political motives, absolute immunity shields them from suit pursuant to § 1983 for their alleged malicious or selective prosecution of plaintiffs, as well as for any misconduct in the presentation of evidence to the grand juries that returned the challenged indictments against plaintiffs." *Id.* at 505. Absolute immunity will be denied only if the prosecutor acts "without any colorable claim of authority." *Id.* at 504. "The

appropriate inquiry, thus, is not whether authorized acts are performed with a good or bad *motive*, but whether the *acts* at issue are beyond the prosecutor's authority." *Id.*

Plaintiff has not challenged Joyce's authority to seek an arrest warrant or to present evidence to the grand jury seeking an indictment. Plaintiff first alleges that there were improper motives in those actions. Those motives are irrelevant in applying Joyce's immunity. Plaintiff then alleges that Joyce made misrepresentations or omissions while performing those acts. As set forth *infra*, Joyce is also entitled to absolute immunity for those actions. Plaintiff has not stated a claim under any theory.

**B.   Joyce is absolutely immune from liability for alleged misrepresentations to secure a warrant for Plaintiff's arrest.**

Joyce is entitled to absolute immunity from liability for submission of a probable cause statement that resulted in issuing a warrant for Plaintiff's arrest. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266-67 (8th Cir. 1996) (absolute immunity "extend[s] to [prosecutor] participating in probable cause hearing") (citing *Burns v. Reed*, 500 U.S. 478, 494 (1991)). Plaintiff makes Joyce's appearance at a probable cause hearing a centerpiece of his Complaint. Plaintiff alleges that Joyce "omit[ted] material facts from the probable cause statement" (Doc. #15 at ¶¶25-26) and "deliberately misrepresented Mr. Smith's actions the actions (sp) that the police officers saw Mr. Smith take as the pursuit reaches its conclusion, misleading the Court with respect to its arrest warrant decision" (Doc. #15 at ¶27). While the language is difficult to follow, its interpretation does not matter. "Even if [a prosecutor] knowingly presented false, misleading, or perjured testimony, or even if he withheld or suppressed exculpatory evidence, he is absolutely immune from suit." *Reasonover*, 447 F.3d at 580. Joyce is absolutely immune from liability for all actions alleged in paragraphs 25-27 of the Complaint.

### C.  Joyce is absolutely immune from liability for statements to the grand jury.

Courts have repeatedly and steadfastly held that "a prosecutor is absolutely immune from liability under 42 U.S.C. § 1983 for his conduct before a grand jury."  *Lawlor v. Connelly*, 471 Fed. Appx. 64, 65 (2d Cir. 2012) (affirming dismissal); *see also Kazt-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016) (affirming dismissal); *Rehberg v. Paulk*, 611 F.3d 828, 840-42 (11th Cit. 2010) (reversing denial of motion to dismiss and finding that prosecutor enjoyed "absolute immunity for the pre-indictment conduct of conspiring to make up and present [investigator's] false testimony to the grand jury"); *Andros v. Gross*, 294 Fed. Appx. 731, 734 (3d Cir. 2008) (holding that even "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings is absolutely protected").   A prosecutor's immunity extends to "withholding exculpatory evidence from a grand jury."  *Lawlor*, 471 Fed. Appx. at 65.

Most of the allegations in the Complaint relate to statements made, or not made, to the grand jury.  In either case, Joyce enjoys absolute immunity from liability for these alleged statements and actions:

- "Misrepresentation to grand jury: 'Kill Shot.'"  Doc. #15, ₱₱ 30-39.  Plaintiff alleges that Joyce misrepresented evidence "to persuade a state court grand jury to indict [Plaintiff] . . . through further misrepresentation."  *Id.* at ₱30.  Plaintiff alleges Joyce made a statement about a "kill shot" that was "false and contrary to evidence[.]"  *Id.* at ₱31.  Plaintiff alleges that evidence presented to the grand jury was not presented at trial.  *Id.* at ₱32.  Plaintiff contrarily then alleges that the trial court found the same argument was not supported by the evidence.  *Id.* at ₱33.  Plaintiff alleges that false or misleading evidence was knowingly presented to the grand jury.  *Id.* at ₱₱34-39.

- "Misrepresentation to grand jury: police homicide reports."  *Id.* at ¶¶40-42.  Plaintiff alleges that Defendant Deeken presented false testimony to the grand jury that Plaintiff wrote his partner's memorandum about the shooting at issue in the underlying criminal case.  *Id.* at ¶40.  Plaintiff alleges that Defendant Deeken later testified that there is nothing wrong with this conduct.  *Id.* at ¶¶41-42.[2]

- "Misrepresentation to grand jury: 'Please don't shoot me.'"  *Id.* at ¶¶43-45.  Plaintiff alleges that Defendant Deeken falsely testified about lies in Plaintiff's written report.  *Id.*  Plaintiff alleges that Defendant Deeken testified before the grand jury that he heard a statement on a recording, but that recording was never submitted as evidence in the trial.  *Id.* at ¶¶44-45.

- "Misrepresentation to grand jury: 'Quick Clot.'"  *Id.* at ¶46.  Plaintiff alleges that Defendant Deeken "deliberately misled the grand jury" through a "suggest[ion]" in his testimony.  *Id.*

- "Misrepresentation to grand jury: Mr. Stockley's blood was on the gun retrieved from Mr. Smith's automobile."  *Id.* at ¶¶47-54.  Plaintiff alleges that Defendants were told by the police lab that there was no bodily fluid on a gun recovered at the scene, but Defendant Deeken, "suggested to the grand Jury there was blood on the gun."  *Id.* at ¶¶47-50.  Plaintiff alleges there was no evidence presented at trial that there was blood on the gun, even from the State's experts.  *Id.* at ¶¶51-52.  Plaintiff alleges Defendants knew this before the grand jury was convened, and therefore the grand jury testimony was therefore misleading.  *Id.* at ¶¶53-54.

---

[2] As far as it related to Joyce, Plaintiff alleges that the Circuit Attorney's office essentially suborned Deeken's alleged perjury, a claim Defendant vehemently denies.

- "Misrepresentation to grand jury: probative value of the presence and absence of DNA." *Id.* at ⁋⁋55-61.  Plaintiff alleges that Defendants did not inform the grand jury about the probative value of DNA evidence, particularly what the probative value of the lack of recovered DNA evidence from a weapon.  *Id.* at ⁋⁋55-61.

Not a single allegation from paragraphs 30 through 61 is actionable.  Again, a prosecutor is entitled to absolute immunity for actions before the grand jury, even knowingly presenting false evidence.  *Andros*, 294 Fed. Appx. at 734.  Joyce enjoys absolute immunity for every action or inaction alleged throughout these paragraphs.

### D.  Joyce is absolutely immune from § 1983 liability under Count I.

After setting forth the lengthy factual allegations in the first 28 pages of his Complaint, Plaintiff admits in the opening to Count I that it was all worthless.  He admits that Joyce is absolutely immune for actions and omissions attributed to her in the Complaint, even if done so maliciously and dishonestly.  Doc. #15 at ⁋⁋86-87.  Still, Plaintiff presses on, insisting that those allegations were made "in order to show the intent and consequences of conduct and omissions for which Ms. Joyce . . . do[es] not enjoy absolute immunity and can be held liable under both federal and state law."  *Id.* at ⁋88.  That conduct is set forth in the heart of Count I, paragraphs 88-93.  A careful reading of each of these paragraphs demonstrates, however, that Plaintiff has stated no cause of action and that Joyce's immunity extends to all conduct alleged.

First, in paragraph 88, Plaintiff alleges that Joyce "violated the Circuit Attorney's own protocol of having all police shootings investigated first by the Force Investigative Unit [("FIU")]," "conducted her own sham investigation or no investigation at all, and avoided a finding by the [FIU] that Stockley had committed no crime and that no prosecution was warranted."  Plaintiff seems to be attempting to remove Joyce from the protection of absolute

immunity and, instead, place her behavior under qualified immunity by alleging that she took administrative or investigative actions.  *See Winslow v. Smith*, 696 F.3d 716, 739 (8th Cir. 2012) ("[P]urely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity," but instead for qualified immunity.). Plaintiff, however, has not stated a cause of action against Joyce for the actions alleged.

**1. Plaintiff has not alleged sufficient facts to state a cause of action or overcome Joyce's absolute immunity.**

Plaintiff's effort to frame the alleged "sham investigation" or "no investigation" as sufficient to avoid Joyce's absolute immunity fails because Plaintiff has not, and cannot, properly allege that the FIU makes the decision to prosecute or conducts that prosecution. Indeed, the most Plaintiff alleges as to a causal relationship between the supposed withdrawal by Joyce of the matter from the FIU and his damages is that the findings he speculates the FIU would have reached "would have avoided the constitutional wrongs and damage alleged herein[.]"  Doc. #15 at ¶88.  That is,  the very allegations of misrepresentations at the probable cause hearing and before the grand jury, to which Joyce is entitled to absolute immunity, are the only "constitutional wrongs and damages" that Plaintiff seeks to remedy.  In other words, setting aside the speculative nature of the allegation about what the FIU would have concluded, the only acts which Plaintiff alleges caused him a constitutional injury are Joyce's decision to prosecute him and her acts and omissions in pursuing that prosecution.  For this conduct, Joyce is absolutely immune.

### a. Plaintiff does not allege facts that Joyce conducted an investigation for which she may be liable.

In paragraph 89, Plaintiff sets forth the allegations that he argues support his claim that Joyce "intentionally rigged and manipulated the reinvestigation of Mr. Stockley[.]"  Not one of these allegations withstands scrutiny as a § 1983 claim and Joyce is entitled to absolute immunity for all of the alleged actions.  First, Plaintiff summarily alleges that Joyce "[c]aused an investigation by the [FIU] to be shut down in order to insure that her self-serving sham investigation was not exposed and derailed through fair and competent investigation[.]"  *Id.* at ¶89(a).  Even if true, Joyce enjoys absolute immunity for terminating an investigation.  *Latta v. Chapala*, 221 Fed. Appx. 443, 445 (7th Cir. 2007) ("Deciding when the evidence is sufficient to stop investigating and seek an indictment is a standard prosecutorial function and covered by absolute immunity[.]").  Further, paragraph 89(a) sets out the *entire* allegation that Joyce improperly participated in the investigation and thereby violated Plaintiff's civil rights.  There is no specific allegation about a command, direction, or suggestion that such an investigation be "shut down."  There is also no allegation about *any* investigative action taken, which Plaintiff admits by alleging that she conducted "no investigation."  Doc. #15 at ¶88.  The allegation is not sufficiently specific to support a cause of action.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (Fed. R. Civ. P. 8(a)(2) requires more than a "naked assertion . . . without some further factual enhancement").

Second, Plaintiff alleges in paragraph 89(b) that Joyce "intentionally rigged and manipulated" the investigation when she allegedly "colluded with and sought to appease community agitators and protest leaders, mispresenting and suppressing the truth in statements to

news reporters, and the publicin (sp) order to avoid the recurrence of demonstrations at times and in manners that she found terrifying." These allegations are irrelevant to any cause of action. These are the same allegations as contained in paragraphs 17-24, that Joyce was motivated to appease protestors in prosecuting Plaintiff. As explained, she is entitled to absolute immunity for her actions, regardless of motive. *Holland*, 2017 WL 3391653, at *2. Further, there is no allegation in this paragraph that has anything to do with any investigation. The allegation relates exclusively to statements allegedly made to "protest leaders," reporters, and the public. There is simply no allegation related to any investigation that she undertook.

Finally, Plaintiff alleges in paragraph 89(c) that Joyce "misrepresented and suppressed information in the preparation and execution of a probable cause statement that subsequently was used to obtain a warrant for [Plaintiff's] arrest that no reasonably informed judge would have issued." Again, Joyce enjoys absolute immunity for statements made to secure a warrant, even if she knew those statements were false. *Reasonover*, 447 F.3d at 580. Plaintiff makes no allegation of fact to support his statement in paragraph 89 that Joyce "rigged and manipulated" an investigation of Plaintiff.

### b. Plaintiff's allegation that Joyce publicly stated she had discovered "new evidence" does not create a civil rights cause of action.

In paragraphs 90 through 92, Plaintiff alleges that Joyce falsely stated that Plaintiff's prosecution was the result of discovery of "new evidence" proving Plaintiff's guilt. These paragraphs appear to be an attempt to shoehorn a defamation claim into a § 1983 claim. This is not possible. "[D]efamation, per se, is not actionable under section 1983." *Underwood v. Pritchard*, 638 F.2d 60, 61 (8th Cir. 1981) (citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976)). Plaintiff fails to state a claim under § 1983.

12

Plaintiff also alleges that Joyce's alleged false statements were made in order to appease protest leaders, promote her reputation, and "[d]emonstrate in particular her technique for and skill at inculcating anti-defendant prejudice within a community prior to the commencement of criminal proceedings."  Doc. #15 at ¶91.  Whatever that means, it is inactionable conduct because her motivations do not affect her absolute immunity and defamation cannot support a § 1983 claim.  *Holland*, 2017 WL 3391653, at *2; *Underwood*, 638 F.2d at 61.  These allegations fail to state any cause of action.

> **c.  The remainder of the allegations in Count I are that Joyce presented false information to support a finding of probable cause and indictment, for which she enjoys absolute immunity.**

In paragraphs 93 and 94, Plaintiff repeats his allegations that Joyce helped Lt. Deeken make false statements during the course of the probable cause and Grand Jury stages of the prosecution to secure an arrest warrant and indictment.  Even if true, Joyce is entitled to absolute immunity for these alleged actions, as set forth *supra*.  The final paragraphs of Count I allege causation and damages; these allegations are irrelevant because the cause of action fails for the reasons stated herein.

> **E.  Plaintiff has not stated a claim in Count II for Joyce's liability in her official capacity under *Monell*.**

Plaintiff has not alleged facts to support a cause of action for violation of section 1983 under the *Monell* standard.  His allegations are conclusory.  He has not alleged facts to support the elements of any of the multiple theories for liability put forth.  The claim also fails because there is no liability to Joyce herself in Count I.  Count II should be dismissed.

To state a § 1983 claim for a constitutional violation under *Monell*, the plaintiff must allege a violation arose from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (affirming judgment on the pleadings) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* at 699-700 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A "custom" may be established by demonstrating: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Id.* at 700 (quoting *Snider v. City of Cape Giradeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)). Plaintiff has not alleged facts to support either a policy or a custom.

### 1. Plaintiff has not alleged a policy or pattern of unconstitutional misconduct.

Plaintiff takes a shotgun approach to his *Monell* claim, alleging all at once that Joyce's actions were a custom, a practice, and a policy. Doc. #15 at ¶102. He also alleges that Joyce was responsible for training, supervising, disciplining, and rewarding police officers and assistant prosecutors. *Id.* at ¶102(d), (e). Plaintiff also alleges that Joyce was deliberately indifferent. *Id.* at ¶102(f). These allegations, of course, track the elements of all the different paths that can bring a defendant to *Monell* liability. Plaintiff alleges all theories because he has

14

no support for any theory.  He has not stated a claim for Joyce's or the Circuit Attorney's liability under *Monell*.

Plaintiff's allegations that there was a policy of unconstitutional actions and omissions are conclusory and cannot support a § 1983 cause of action under *Monell*.  *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860-61 (8th Cir. 2018).  In *Whitney*, the plaintiff sued a correctional officer and the City after his son died by suicide while in custody.  *Id.* at 859. Plaintiff alleged the officer did not provide adequate care to his suicidal son and that the City had inadequate policies to care for his son.  *Id.*  The district court dismissed claims against both defendants.  *Id.*  With respect to *Monell* liability against the City, the plaintiff alleged that jail personnel not named in the complaint followed a jail policy to do nothing when an inmate is suicidal and were deliberately indifferent to plaintiff's son hanging himself.  *Id.* at 861.  The Court found this insufficient to state a claim:

> Tellingly, the complaint does not allege any facts to support this legal conclusion. The surmise of the allegation is unsupported by sufficient factual allegations. There is, for example, no claim that any identifiable jail official had knowledge that [plaintiff's son] was in the process of committing suicide or even that a particular jail official suspected that he might be committing an act of self-harm. In short the complaint fails to allege any constitutional violation arising out of a municipal policy that would expose the City to *Monell* liability.

*Id.*  Likewise, Plaintiff here has made mere conclusory allegations of a "policy" that was applied only in this instance.

First, Plaintiff alleges that Joyce "adopted, implemented, carried out, and tolerated all of the prosecutorial and police actions and omissions alleged against Ms. Joyce and Lt. Deeken in this complaint." Doc. #15 at ¶100.  He then recites allegations previously made, including: (a) publication of a false statement "suggesting that 'new evidence' proved [Plaintiff's] guilt," (b) "thwart[ing] any reinvestigation" and instead "rely[ing] on Ms. Joyce's own bogus

reinvestigation," and (c) soliciting Lt. Deeken's "false and misleading attestation" in the probable cause hearing and in seeking an indictment.  The same allegations are made again   As explained *supra*, Joyce enjoys absolute immunity for all of the alleged actions or omissions in pursuing Plaintiff's prosecution.

Moreover, these allegations relate only to one case, the case at hand.   Plaintiff has made no factual allegation of any similar circumstance to the case at hand.  Plaintiff has made no factual allegation of any similar circumstance beyond the insufficiently conclusory claim that such policies or customs exist generally.  Plaintiff must allege facts supporting the claim of a "continuing, widespread, persistent pattern of unconstitutional misconduct" in order to allege a custom under § 1983.  *Corwin*, 829 F.2d at 700.   "Liability for an unconstitutional custom or usage, however, cannot arise from a single act."  *McGautha v. Jackson County, Mo., Collections Dep't*, 36 F.3d 53, 57 (8th Cir. 1994); *Molina v. City of St. Louis, Missouri*, 2018 WL 1924772, at *3 (E.D. Mo. April 24, 2018) (dismissing § 1983 counts where "only two incidents are alleged").

The same is true if the plaintiff alleges an unconstitutional policy pursuant to one incident.  *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal and finding that an allegation of "an isolated incident" of misconduct "cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983.").  Plaintiff's allegations are solely about the treatment of one person: himself.  He cannot sufficiently allege a *Monell* claim based on acts or omissions related only to himself.

Plaintiff's failure to sufficiently allege a policy or custom is seen repeatedly in the remaining allegations in Count II.  He alleges that the City is accountable through Joyce's actions "because it intended to and did encourage and reward its agents and employees for

16

violating [Plaintiff's] constitutional rights." Doc. #15 at ¶101. In paragraphs 102 and 103, the allegations repeat the allegations from Count I, but repackage *the same allegations* as "policies, practices, and customs." These allegations are insufficient to allege an unconstitutional policy, practice or custom. In *Gibbs v. City of New Madrid*, 2018 WL 1811903, at *5 (E.D. Mo. April 17, 2018), the plaintiff alleged:

- A policy or custom of failing to act on and/or investigate complaints of unconstitutional conduct;
- A policy of improperly training, supervising, and disciplining officers with respect to ordinance enforcement and use of tasers and force;
- The deficiencies constitute "a prior pattern of unconstitutional conduct so persistent and widespread as to have the effect and force of law";
- A policy or custom of "hitting, kicking, punching, and/or tasing individuals after they have already been handcuffed and/or incapacitated; tasing individuals without verbal warning; and excessively tasing individuals"; and
- City policymakers had delegated policymaking to individual officers.

*Id.* at *5 (quoting from complaint). Despite the plaintiff repeatedly using the term "policy or custom," Judge White found that the plaintiff failed to state a claim under *Monell*:

> While Plaintiff combines policy and custom in his complaint, Plaintiff has failed to allege facts sufficient to support the existence of either an unconstitutional policy or widespread pattern of unconstitutional conduct. Indeed, **aside from his conclusory allegations that there are prior similar complaints about this alleged unconstitutional policy or widespread pattern of unconstitutional conduct, Plaintiff's allegations pertain solely to his injury.** "Generally, an isolated incident of alleged police misconduct, such as [Plaintiff] alleges occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983."

*Id.* (quoting *Ulrich*, 715 F.3d at 1061) (emphasis added);[3] *see also Tracy v. SSM Cardinal Glennon Children's Hospital*, 2016 WL 3683000, at *12 (E.D. Mo. July 12, 2016) (dismissing claim against police chief in his official capacity where "Plaintiffs' allegations concerning custom or practice are mere labels and conclusions which are inadequate to state a claim.");

---

[3] Indeed, one of the aspects of Stockley's prosecution that made the case controversial was the claim that the Circuit Attorney had, in effect, a policy and custom of *never* prosecuting police officers for excessive use of force. In this context, the isolated focus in the Complaint on Stockley's case, and the corresponding absence of factual allegation of similar cases against other officers, is entirely understandable.

*Crump v. Boester*, 2016 WL 1624017, at *2-3 (E.D. Mo. April 25, 2016) (granting motion to dismiss where plaintiff "only pleads the facts related to his injury and then asserts that the types of actions taken against him were 'customs' or 'practices' occurring on a widespread basis[.]"); *A.J. ex rel. Dixon v. Tanksley*, 2014 WL 1648790 (E.D. Mo. April 24, 2014) (dismissing *Monell* claim where plaintiffs alleged a policy or custom of the acts allegedly performed by the underlying defendants, but the Court found plaintiffs "have not stated what other transgressions have occurred, or how the department addressed or failed to address any such transgressions").

Further, Plaintiff's allegations of an unconstitutional policy or custom are contradicted within the Complaint itself.  Plaintiff alleges that the FIU was created in 2014 to investigate shootings by police, and that it had cleared an officer's shooting in another case.  Doc. #15 at ¶17.  He then alleges that the FIU was assigned to reopen this investigation and only had possession of the file for one day before being "instructed to return the file because Ms. Joyce intended to charge [Plaintiff] with murder no matter what they found or recommended."  *Id.* at ¶21.  She had "hijack[ed]" the FIU's investigation.  *Id.*  By doing so, Joyce "violated the Circuit Attorney's own protocol of having all police shootings investigated first by the [FIU.]"  *Id.* at ¶¶88, 100(b).  Plaintiff's allegation, therefore, is that the Office of the Circuit Attorney had a policy by which police shootings were investigated by the FIU, and Joyce did not follow the policy.  This is not an allegation of an unconstitutional policy or custom.  This is an allegation – denied by Joyce – that, in this sole instance, she did *not* follow her Office's policy.  That is insufficient to allege a cause of action under *Monell*.

2. **Joyce is entitled to absolute immunity for training or supervising assistant prosecutors. She is also not a supervisor of St. Louis Police and cannot be held liable for allegations of supervisor liability over Lt. Deeken and "other officers."**

Plaintiff alleges that Joyce improperly trained and supervised "agents and employees," including Lt. Deeken.  Doc. #15 at ¶102(d).  He also alleges that Joyce "fail[ed] to discipline and rather reward[ed] Lt. Deeken and other officers and agents[.]"  *Id.* at ¶102(e).  First, supervisory prosecutors enjoy absolute immunity from claims that their supervision or training of subordinate prosecutors was constitutionally inadequate.  *Van de Kamp v. Goldstein*, 555 U.S. 335, 343-49 (2009).  Further, Plaintiff cannot state a claim against Joyce for these actions because she is not a supervisor, trainer, or disciplinary authority of the St. Louis Police.  A government official or entity will not be subject to supervisor liability for the unconstitutional acts of third parties for which the official has no responsibility to supervise or train.  *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (holding that "[t]he district court properly rejected [Plaintiff's] argument regarding Cape Girardeau's failure to train [the police officer who allegedly violated Plaintiff's rights]" given that "Cape Girardeau was not responsible for training [the police officer] . . . .").  As Circuit Attorney of the City of St. Louis, Joyce has limited authority "to manage and conduct all criminal cases, business and proceedings of which the circuit court of the city of St. Louis has jurisdiction."  Section 56.450 RSMo.  Moreover, as an elected county official, Joyce is not an employee of the City of St. Louis.  Section 56.430 RSMo.

Missouri law requires that the defendant police officers be trained by the Board of Police Commissioners and the Department of Public Safety, not the Circuit Attorney.  *See* sections 84.090; 650.005 RSMo.  As such, Plaintiff's claim against Joyce for supervisor liability for the alleged misconduct of police officers fails to state a claim.

19

**3.   Plaintiff's *Monell* claim fails because the underlying claim fails.**

As stated *supra*, Plaintiff has not stated a claim against Joyce because, even if the allegations he makes are true, she is entitled to absolute immunity for all of those actions. Therefore, she is also not liable in her official capacity for the same actions.   "[A]bsent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City."   *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860-61 (8th Cir. 2018) (affirming dismissal) (citing *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017), *Sitzes v. City of W. Memphis*, 606 F.3d 461, 470 (8th Cir. 2010), and *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)).

**F.   Plaintiff has not stated a claim for defamation in Count III.**

The final Count against Joyce, both individually and in her official capacity, is for defamation.   The statements attributed to Joyce, that she found or knew of "new evidence" showing or proving Plaintiff's guilt, are not actionable and the cause of action should be dismissed.

**1.   The Office of the Circuit Attorney is immune from liability for defamation.**

First, to the extent that this claim is made against Joyce in her official capacity,[4] the claim is a masked § 1983 claim and must be dismissed.   *Underwood*, 638 F.2d at 61 (8th Cir. 1981). Plaintiff fails to state a claim against Joyce in her official capacity.   Alternatively, if the claim is against the Office of the Circuit Attorney for Joyce's alleged statements, the Office is entitled to sovereign immunity under Missouri law.   Section 537.600 RSMo; *Gifford v. Poplar Bluff R-1 School Dist.*, 2013 WL 6241986, at *2 (E.D. Mo. Dec. 3, 2013) (section 537.600 immunity

---

[4] The Complaint states that the defamation claim is made against Joyce "Individually and in her capacity as former Circuit Attorney of the City of St. Louis."   Doc. #15 at p. 36.

covers defamation claim); sections 56.010; 56.450 RSMo (Circuit Attorney is an office created by Missouri statute).

### 2. Plaintiff has failed to state a claim for defamation.

Under Missouri law, the elements of a defamation claim are: (1) publication; (2) of a defamatory statement; (3) that identifies the plaintiff; (4) that is false; (5) that is published with the requisite degree of fault; and (6) that damages plaintiff's reputation. *State ex rel. BP Products N. Am., Inc. v. Ross*, 163 S.W.3d 922, 929 (Mo. banc 2005). The Court must determine whether a statement is capable of defamatory meaning. *Wahl v. Braun*, 938 S.W.2d 591, 594 (Mo. App. E.D. 1996). The plaintiff in a defamation action also must demonstrate that the defendant is not entitled to any privilege that would shelter her from legal action for the allegedly defamatory statement made. *Pape v. Reither*, 918 S.W.2d 376, 380-81 (Mo. App. E.D. 1996). Statements of opinion are absolutely privileged, even if made with malicious intent. *Id.* The opinion privilege applies unless the statement "implies the existence of undisclosed defamatory facts." *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 241 (Mo. App. E.D. 2011).

### a. Plaintiff fails to quote the alleged defamatory statement.

The actual statements that are alleged to be defamatory must be specifically alleged. In *Missouri Church of Scientology v. Adams*, 543 S.W.2d 776 (Mo. banc 1953), the Missouri Supreme Court held that a petition for libel is invalid if it does not set forth the specific words claimed to be defamatory:

> A petition seeking recovery for libel per se should recite in the petition the specific words or statements alleged to be libelous. *** The reason for the rule we state is obvious. To do otherwise requires a court to search lengthy articles or books to discover whether they contain words which are libelous per se. Plaintiff knows the words claimed to be libelous and for which recovery is sought and should be required to specify them with particularity.

21

*Id*. at 777 (citation and footnote omitted). The court further ruled that "incorporating the entire series of articles . . . is not a substitute for specifically setting forth in the petition the particular words alleged to be libelous per se." *Id*. at 777 n.2. Many Missouri cases follow this well-settled rule in cases of both libel and slander. *E.g*., *Tindell v. Holder*, 892 S.W.2d 324, 327 (Mo. App. S.D. 1994) ("To state a cause of action for libel, a plaintiff must make his allegations *in haec verba*, or in the exact words alleged to be defamatory"; no error to dismiss libel count that did not quote the defamatory statement); *Tri-County Retreading, Inc. v. Bandeg, Inc.*, 851 S.W.2d 780, 785 (Mo. App. E.D. 1993) (same).

Here, Plaintiff generically alleges that Joyce stated there was "new evidence" in her review of the case against Plaintiff, and that this evidence led her to seek charges against Plaintiff for first degree murder.  Plaintiff tellingly does not quote Joyce beyond the two words: "new evidence," and only alleges, without stating a fact or quoting anyone, that the "new evidence" "prov[es] that ]Plaintiff] murdered Mr. Smith." *See* Doc. #15 at ¶¶22 ("new evidence"), 62 ("new evidence"), 64 ("newly discovered evidence"), 110 ("new evidence"). This, and only this, is the statement that Plaintiff alleged caused him damage.  It is insufficient to state a claim for defamation.

### b.  The alleged statement is not defamatory.

Whether the language at issue is defamatory is a "question of law" for the Court.  *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 155 (Mo. App. E.D. 2005). To qualify as defamatory, "words must be of such a nature that [the court] can presume, as a matter of law, that they will tend to disgrace or degrade the person or expose him to public hatred, contempt, or ridicule or cause him to be shunned or avoided." *Mandel v. O'Connor*, 99 S.W.3d 33, 36 (Mo. App. E.D. 2003).  It is not enough that a plaintiff finds the language to be "unpleasant or annoying." *Id.*

22

In determining whether a particular statement is defamatory, the words must be "stripped of any pleaded innuendo" and "construed in their most innocent sense." *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 239 (Mo. App. E.D. 2011). They must also be considered "in context" and given their "plain and ordinarily understood meaning." *Id.* The alleged defamatory words must be construed in the sense which is "most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed." *Id.* "While these standards are not absolutely consistent, [ ] they should be read together." *Id.* "If a statement is capable of a nondefamatory meaning, and can be reasonably construed in an innocent sense, [the Court] "*must* hold the statement nonactionable as a matter of law." *Id.* (emphasis added). Plaintiff cannot meet this burden.

As noted, Plaintiff has not provided a direct quote of the alleged defamatory statement, so the Court is not able to review the statement in context.  Plaintiff does not complain about statements made regarding other evidence of his guilt in the Smith shooting (*e.g.,* his statement during the chase that he intended to kill Smith)[5] and thus one can only conclude that it is the word "new" or "newly" that is the crux of his defamation claim.

That concept that evidence of guilt has been newly discovered – as opposed to its existence regardless of when it was discovered – does not in and of itself tend to disgrace or degrade the Plaintiffs or expose him to public hatred, contempt, or ridicule or cause him to be shunned or avoided.  Construing the statement in its most innocent sense, the statement simply conveys the timing of the discovery of evidence.  Stripping the statement of the innuendo

---

[5] Indeed, allowing a defamation claim based on a prosecutor's statement that she had evidence of the defendant's guilt would allow such a claim against every prosecutor for every prosecution.  a prosecutor's decision to seek charges against a defendant is a standard prosecutorial function.  *See Latta*, 221 Fed. Appx. at 445.  In fact, a prosecutor is ethically prohibited from pursuing a prosecution unless she reasonably believes there is probable cause.  Mo. R. Civ. P. 4-3.8(a).  If a prosecutor stating to the media that evidence she reviewed led her to seek an indictment against a defendant was sufficient for the accused to state a claim for defamation, then every prosecutor in the State would be liable for announcing that a defendant had been charged.

Plaintiff may seek to impose on it, the statement is capable of a non-defamatory meaning which this Court must give it as a matter of law.

Further, Plaintiff admits that the allegedly defamatory statement, that Joyce had discovered "new evidence," was true. Plaintiff alleges that the "new evidence" discovered was the absence of DNA on Mr. Smith's gun. Doc. #15 at ¶66. Plaintiff does not allege that this alleged statement is false, i.e., that Joyce had not newly learned that the decedent's DNA was not on the gun. Instead, Plaintiff argues that "the absence of Mr. Smith's DNA on the gun [was] meaningless." Doc. #15 at ¶67. Plaintiff's defamation claim therefore fails: he has not alleged the statement (that there was "new" evidence) was false; he merely alleges that the evidence was of little probative value. That does *not* mean that the lack of DNA was not "new evidence" or "newly discovered evidence," and therefore the defamation claim must fail.

Finally, in the Complaint, Plaintiff argues that Joyce's statements carry additional weight with the public because of her position as a prosecutor, citing *State v. Storey*, 901 S.W.2d 886, 900-01 (Mo. banc 1995). Doc. #15 at ¶112. It is important to note that the *Storey* Court was not ruling on a defamation cause of action and that, in fact, it did not make the statement that Plaintiff has quoted in the Complaint. *Storey*, 901 S.W.2d 886 (finding that prosecutor made prejudicial argument during closing argument and that defense counsel's failure to object constituted ineffective assistance of counsel). Plaintiff also alleges in paragraph 112 that Plaintiff violated Missouri's Rules of Professional Conduct. Even if true, this has nothing to do with a defamation claim and should be disregarded.

## III.  Conclusion

Plaintiff's allegations boil down to a grievance with Joyce for charging him with murder. This is the prosecutor's job, and she enjoys absolute immunity when performing it. Plaintiff has

not stated a claim against Joyce for those actions.  Likewise, he has not stated a claim against Joyce in her official capacity because he has not alleged facts supporting an unconstitutional policy, practice or custom.  Finally, Plaintiff has not stated a claim for defamation because the Office of the Circuit Attorney is entitled to immunity and because he admitted that the allegedly defamatory statements were, in fact, true.

WHEREFORE, Defendant Jennifer M. Joyce, individually and in her official capacity as the former Circuit Attorney for the City of St. Louis, respectfully requests that this Court grant her Motion to Dismiss and grant any further relief the Court deems necessary and appropriate.

/s/ David H. Luce
David H. Luce, #36050MO
Jason K. Turk, #58606MO
BLITZ, BARDGETT & DEUTSCH, L.C.
120 S. Central Avenue, Ste. 1500
St. Louis, Missouri 63105
(314) 863-1500
(314) 863-1877 (facsimile)
dluce@bbdlc.com
jturk@bbdlc.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent via the Court's electronic notification system on this 16th of August, 2018.

/s/ David H. Luce

25