THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JASON STOCKLEY ) | |
| ) | |
| Plaintiff ) | No. 4:18-cv-00873 CAS |
| ) | |
| vs. ) | |
| ) | |
| JENNIFER MARIE JOYCE, etc., et al. ) | |
| ) | |
| Defendants ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION
TO DISMISS OF DEFENDANT CITY OF ST. LOUIS (CORRECTED)**

**A.  Introduction**

Jason Stockley has filed an action under 42 U.S.C. § 1983 seeking damages for the violation of his civil rights.  He contends that the Circuit Attorney for the City of St. Louis established and oversaw a corrupt investigation process designed to facilitate his future prosecution for first degree murder and that she conducted a public relations campaign consisting of false assurances of "new evidence" proving Mr. Stockley's guilt. Ms. Joyce's policy with respect to Mr. Stockley was premised on a new personal interest in seeing him charged and prosecuted, and in material part was designed to overcome the effect of prior unanimous findings by local and federal police and prosecutors— including, at the time, Ms. Joyce—that Mr. Stockley had committed no crime and should not be prosecuted.

Mr. Stockley has asserted a claim against the City of St. Louis based on the municipal liability doctrine emanating from *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati,* 475 U.S.

469 (1986). The City has moved to dismiss that claim, insisting that the conduct alleged by Mr. Stockley does not amount to an actionable municipal policy under those authorities. In fact it does. The City's motion should be denied.

## B. Analysis of Motions for Judgment on the Pleadings

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Rule 12(b)(6) makes it clear that the claim asserted by a plaintiff must assert a claim based on something more than speculation, *id.* at 555—that is, the claim must be plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). But in determining whether a claim satisfies that requirement, a court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff." *Schaller Telephone Co. v. Golden Sky Systems, Inc.,* 298 F.3d 736, 740 (8th Cir. 2002); *see also B & B Hardware, Inc. v. Hargis Industries, Inc.,* 569 F.3d 383, 387 (8th Cir. 2009) (explaining that to survive a motion to dismiss, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face'") (quoting *Twombly,* 550 U.S. at 570). "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Gelboim v. Bank of America Corp.,* 828 F.3d 759, 781 (2$^d$ Cir. 2016).

The Supreme Court has made it clear that the dispositive authority granted by Rule 12(b)(6) must be viewed in conjunction with the generous pleading requirement of Rule 8. *Twombly,* 550 U.S. at 555; *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE & PROCEDURE § 1356 (3d ed. 1998) Westlaw FPP (stating that "[o]nly when the plaintiff's complaint fails to meet this liberal pleading standard is it subject to dismissal under Rule 12(b)(6)"). Properly considered, the facts alleged by Mr. Stockley in support of his municipal liability claim against the City of St. Louis set forth an actionable claim under § 1983 and *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978).

That the defendant contends for an alternative interpretation of those facts—favoring itself and exonerating the City from liability—has no place in the Court's Rule 12(b)(6) analysis.  As the Supreme Court made clear in *Twombly:* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'"  *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The pleader is required to do no more than "nudge[] [his] claims across the line from conceivable to plausible." *Id.* at 570.

### C.  Mr. Stockley's Allegations

Mr. Stockley's complaint identifies Ms. Joyce as the elected Circuit Attorney and chief prosecutor for the City of St. Louis.  Doc. 15 at 5.  He summarizes the scrupulous investigations into the death of Anthony Smith conducted by federal and local law enforcement agencies, and overseen and evaluated by the Department of Justice, the local United States Attorney's Office, and Ms. Joyce's local office during 2011 and 2012.  *Id.* at 5-6.  The Department of Justice declined to prosecute at that time.  So did the United States Attorney for the Eastern District of Missouri.  So did Ms. Joyce on behalf of the City of St. Louis.  *Id.*

Mr. Stockley also alleges that after 2012 there never was new evidence discovered or brought forth that might indicate he had committed a crime rather than performed his duty as a police officer in protecting the public from a significant and imminent danger—and thus that when Ms. Joyce announced to the press and members of the public in 2016 that she had discovered "new evidence" through her own investigation showing that Mr. Stockley was guilty of murder, there was no new evidence, her investigation was a sham, and her statements were false. *Id.* at 6-8.

Mr. Stockley alleges that the St. Louis Police Department's Force Investigation Unit—which he identifies as a special division created to investigate shootings by police officers after the death of Mr. Smith—had been assigned to reopen the investigation of Mr. Smith's shooting, and that its officers had taken possession of the law enforcement file on the incident. *Id.* at 6-8. The complaint states that approximately one day later the Force Investigation Unit officers were instructed to stand down and return that file because Ms. Joyce intended to charge Mr. Stockley with murder no matter what a new investigation found or recommended. *Id.* at 7-8. Mr. Stockley alleges that Ms. Joyce intentionally caused the abrupt cancellation of that investigation. *Id.*

Mr. Stockley alleges that Ms. Joyce made false statements to the press and members of the public and squelched any actual new investigation to serve her personal interests rather than to perform the judicial functions of chief prosecuting attorney. He asserts that her purposes were to appease protesters and protest leaders who had intimidated her, to promote her standing as an elected official, and to enhance her

reputation as a prosecuting attorney in service of her intention to leave her public office and establish a private consultancy. Id. at 8.

The complaint alleges that Ms. Joyce caused the termination of the Force Investigation Unit inquiry to avoid another and current police finding that Mr. Stockley had committed no crime, accompanied by another and current recommendation that no prosecution was warranted. Id. at 29-30. Mr. Stockley avers that such a finding was inevitable in view of the facts that there was no new evidence having any tendency to prove the commission of a crime and that every law enforcement agency and prosecutorial authority that had investigated Mr. Smith's death in the past had concluded that no police crime had been committed. Id. He alleges that competent investigation by the specialized Force Investigation Unit would have exposed her sham investigation and claim of incriminating "new evidence" and avoided his arrest, indictment, and prosecution.

Mr. Stockley alleges that Ms. Joyce's promulgation of the false claim of "new evidence" proving him guilty of first degree murder was intended to appease protest leaders and reduce her fear of further protests directed at her, promote her reputation in service of the private consultancy she would establish after leaving public office, and purport to demonstrate her techniques for and skill at inculcating anti-defendant prejudice within a community. *Id.* at 30-31. To the extent that these functions are prosecutorial at all, they surely are not "intimately associated with the judicial phase of the criminal justice process." *Imbler,* 424 U.S. at 430.

Mr. Stockley alleges in Count I of his complaint that Ms. Joyce's administrative and investigative misconduct violated his Fourteenth Amendment rights due process and fair treatment by police and prosecuting attorneys. Doc. 15 at 31-32. He alleges in particular that but for that non-judicial and pre-prosecution conduct he would not have been arrested and prosecuted for first degree murder, subjected to the risk of wrongful conviction and incarceration for the remainder of his life, deprived of the money and peace that he lost on account of that prosecution.

In Count III of his complaint, Mr. Stockley alleges that as Circuit Attorney Ms. Joyce was the final authority for the City regarding the establishment, implementation, and execution of prosecutorial customs, rules, practices, and policies. Id. at 33. The complaint avers that Ms. Joyce had final policymaking authority for the City regarding the management and conduct of all criminal cases over which the Circuit Court for the City of St. Louis had jurisdiction, and that the policy made by Ms. Joyce and alleged in this complaint thus was the policy of the City. Id.

Mr. Stockley alleged that the practices and policies described in his complaint were known to and condoned and ratified by Ms. Joyce as the City's final policymaker in criminal cases, and thus constituted the official policy and practice of the municipality. Id. at 36. His complaint stated that those practices and policies were carried out during his own criminal reinvestigation without regard for his constitutional rights.

Mr. Stockley alleged that the City, acting through Ms. Joyce, adopted and carried out the following prosecutorial actions, among others:

• The publication of false and misleading statements suggesting that "new evidence" proving Mr. Stockley's guilt of murder when the previous evidence consistently had been found insufficient to warrant charging him with any crime.

• The decision to thwart any actual reinvestigation of the death of Mr. Smith by the St. Louis Police Department's Force Investigation Unit, and rely instead on Ms. Joyce's own bogus reinvestigation, together with the false claim of new evidence and the misrepresentation and suppression of actual evidence, as the basis for proceeding in the matter.

• Soliciting and adducing the false and misleading attestation of Lt. Kirk Deeken in order to procure the probable cause findings that were prerequisites for securing an arrest warrant and an indictment.  Id. at 34.  He alleged that the City, acting through Ms. Joyce, engaged in the following unconstitutional practices, among others:

• Conducting a sham investigation that was not designed to ascertain the truth and prosecute individuals for the sole purpose of bringing offenders to justice;

• Effectively quashing competent investigation by police investigators with special experience in the review of police shooting cases with no fixed and predetermined outcome.

• Presenting false and misleading evidence and suppressing other important evidence prior to and after having obtained a finding of probable cause.

• Fomenting and encouraging police misconduct in the course of developing charges against an individual.

    • Misrepresenting and suppressing evidence in statements to news media and the public.

    • Improperly training and supervising agents and employees, in particular Lt. Deeken and the Assistant Circuit Attorneys who encouraged, enabled, and presented his misleading and dissembling testimony.

    • Failing to discipline and instead rewarding Lt. Deeken who violated the constitutional rights of individuals under investigation and thus effectively rewarding him for his wrongful acts and omissions.

    • Acting with deliberate indifference to the violations of individual constitutional rights by its law enforcement officers.  Id. at 34-35.

The complaint alleged that during 2016 there was a policy, practice, and custom of the City and its Office of Circuit Attorney, implemented and approved by Ms. Joyce, that deliberately deprived Mr. Stockley of his constitutional rights, as exemplified by:

    • The use of self-serving pre-prosecution tactics to further the personal agenda of the Circuit Attorney rather than to prosecute for the purpose of bringing an offender to justice.

    • The undermining of the accused's constitutional rights to trial before a fair and impartial jury if ultimately charged by transmitting and vouching for false claims of incriminating evidence through the news media and individual public leaders, and thus tainting prospective jurors and heighten public condemnation of the prosecutor's target.

• Issuing arrest warrant applications through the Circuit Attorney's warrant office on the basis of charges that were not fairly susceptible to proof beyond a reasonable doubt.  Id. at 35.

### D.  Argument

The City contends that Mr. Stockley has failed to allege the deprivation of his right to due process and thus has not stated a claim of Constitutional wrong cognizable under § 1983.  Doc. 27, Mem. Supp. Mot. Dismiss at 4.  The Eighth Circuit has recognized a due process right to be free from reckless investigation by law enforcement officials.  *See, e.g., Wilson v. Lawrence County,* 260 F.3d 946 (8th Cir. 2001).  In *Wilson* the Court of Appeals recognized that criminal investigators "must be faithful to the overriding interest that 'justice shall be done'" and held that "the proper standard to judge whether the officers' conduct violates due process is recklessness." *Id.* at 956-57.  In *Scheeler v. City of St. Cloud,* 402 F.3d 826 (8th Cir. 2005), the Court stated that "the general test of whether executive action denying a liberty interest is egregious enough to violate due process is whether it shocks the conscience." *Id.* at 831 (quoting *Wilson,* 260 F.3d at 956).  In *White v. Smith,* 696 F.3d 740 (8th Cir. 2012), the Court recognized that due process is violated by the contrivance of law enforcement officials to deprive an individual of liberty through the deliberate use of false evidence. *Id.* at 759 (citing *Napue v. Illinois,* 360 U.S. 264, 269 (1959), and *Mooney v. Holohan,* 294 U.S. 103, 112 (1935)).  Mr. Stockley's complaint claims that his right to due process was violated by the investigative and administrative conduct he attributes to Ms. Joyce and the testimonial shenanigans of Lt. Deeken at her instance.  Doc. 15 at 32.  Throughout his complaint he

alleges investigation manipulation and the dissemination of falsehoods attributable to Ms. Joyce that transcended recklessness.  The latter declarations to the news media and citizen leaders inevitably tainted the pool of potential jurors diminished Mr. Stockley's Sixth Amendment right to trial before an impartial jury of his peers.  *See Duncan v. Louisiana,* 391 U.S. 145,  155-56 (1968) (stating that "[t]he deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment").

The City's suggestion that Mr. Stockley has failed to allege the deprivation of a Constitutional right is frankly chilling.

The City's argument that Mr. Stockley has failed to state a claim despite the Supreme Court's holding in *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), is untenable.  *Pembaur* recognized unequivocally that "municipal liability may be imposed [under § 1983] for a single decision by municipal policymakers." *Id.* at 480.  In that case deputy sheriffs attempting to execute arrest warrants were blocked from entering a medical clinic where the individuals worked.  *Id.* at 471-73.  The deputies called their supervisor for guidance and were told to follow the orders of the county prosecutor.  The prosecutor directed the deputies to enter the clinic forcibly.  They did, and thereby violated the clinic operator's Fourth Amendment rights.  *Id.* at 484.  The Supreme Court concluded that "[t]o deny compensation to the victim would … be contrary to the fundamental purpose of § 1983." *Id.* at 481.

More to the point, *Pembaur* held that § 1983 liability for the Constitutional wrong could be assigned to the prosecutor's municipality. The Supreme Court began its analysis with a summary of its opinion in *Monell*: "*Monell* is a case about responsibility … [W]e held that local government units could be made liable under § 1983 for deprivations of federal rights." *Pembaur,* 475 U.S. at 478 (quoting *Monell,* 436 U.S. at 691). The Court noted that *Monell's* construction of § 1983 resulted in a limitation of municipal liability: cities cannot be held liable under the statute "by application of *respondeat superior.*" 475 U.S. at 478 (citing *Monell,* 436 U.S. at 691). Thus *Monell* had held that "tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's 'official policy.'" *Pembaur,* 475 U.S. at 479 (quoting *Monell,* 436 U.S. at 694). The Supreme Court explained:

> The "official policy" requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipality is limited to action for which the municipality is actually responsible.

*Id.* (emphasis in original).

*Pembaur* proceeded to recognize that "municipal lability may be imposed for a single decision by municipal policymakers under appropriate circumstances," and that consistent with *Monell* municipal liability can be incurred by one or more municipal officials "'whose acts or edicts may fairly be said to represent official policy.'" *Id.* at 480 (quoting *Monell,* 436 U.S. at 694). The Court noted that "any other conclusion would be inconsistent with the principles underlying § 1983." *Id.* And it held: "[W]here action is directed by those who establish governmental policy, the municipality is equally

responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481.

As the City notes in its memorandum, the Supreme Court specified in *Pembaur* that municipal liability for a single decision by municipal policymakers only arises "under appropriate circumstances." *Id.* at 479. *Pembaur* explained:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion … The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Id.* at 482.

The City contends that *Monell* and *Pembaur* cannot render it liable for Joyce's conduct because "[her] decision to prosecute Plaintiff was not a 'policy,' but a discretionary decision made in exercising her function as a prosecutor." Doc. 27 at 9. Although *Pembaur* held that the fact of a municipal official's discretion in the exercise of particular functions alone does not give rise to municipal liability, the requisite "something more" is the official's "responsib[ility] for establishing final government policy respecting such activity." *Id.,* 475 U.S. at 482. By statute the Circuit Attorney of the City of St. Louis has final authority for "manag[ing] and conduct[ing] all criminal cases, business and proceedings of which the circuit court of the city of St. Louis shall have jurisdiction." Mo. Rev. Stat. § 56.450. It could hardly be clearer that Ms. Joyce was empowered to establish the City's "final government policy" regarding the operation of her office.

The City cites *Mettler v. Whitledge,* 165 F.3d 1197 (8th Cir. 1999), as authority for avoiding liability in this case. Doc. 27 at 9. Mettler stated that a "policy" in the contemplation of *Monell* was "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.* at 1204. The City may be suggesting that the conduct alleged by Mr. Stockley was a one-off rather than something emblematic of how every potential criminal case that comes to the Circuit Attorney's attention would be handled, and thus Ms. Joyce's choice about how the investigation and public relations in his case would be handled could not have been a policy within the contemplation of *Pembaur*. A policy confined to one case most certainly can give rise to municipal liability.

The Supreme Court found it "plain" that municipal liability can be founded on "a single decision" by a municipal policymaker. *Pembaur,* 475 U.S. at 480. The Court recognized expressly that municipal liability under § 1983 can be founded on "a course of action tailored to a particular situation and not intended to control decisions in later situations." *Id.* at 481. Nothing in *Mettler* is inconsistent with that holding. The City's desire to find some doctrine-altering authority in the latter opinion should be rejected.

The City contends finally that Ms. Joyce's decision to prosecute Mr. Stockley "is certainly not a 'choice of a guiding principle or procedure,'" noting that prosecutors decide whether there is enough evidence to charge an individual in every case and suggesting that "they do not create new 'policy' every time they do.'" Doc. 27 at 9-10. Mr. Stockley has alleged a policy toward his case chosen and implemented by Ms. Joyce well before she actually initiated his prosecution. It included gross manipulation of

public relations regarding the case and grotesque manipulation of the investigative process.  This case hopefully was a one-off.  But all of Mr. Stockley's § 1983 claims—including his Monell claim—are premised on a course of conduct that eventually included the initiation of charges but was established long before that event.  The policy driving that course of conduct was dictated and overseen by the city's final authority on prosecutorial policymaking.

### E.  Conclusion

The motion of the City of St. Louis to dismiss Mr. Stockley's *Monell* claim should be denied for the reasons set forth in this memorandum.

Mr. Stockley is willing to amend his complaint if the Court grants the motion to dismiss.  It is Mr. Stockley's intention to request leave to amend promptly if the Court grants Ms. Joyce's motion in whole or in part, provided that he and his counsel are able to assert a claim that avoids or satisfies any pleading deficiency identified by the Court.

Should the Court decide to grant Ms. Joyce's motion, Mr. Stockley requests that the order be conditionally without prejudice and grant him a reasonable amount of time within which to tender a proposed amended complaint to the Court, together with a motion requesting leave to file that pleading.

FINNEY LAW OFFICE, LLC

/s/Daniel P. Finney Jr., #26389
225 S. Meramec. Suite 1200
Clayton, MO 63105
(314) 646-0300
(314) 646-0303  Fax
Attorney for Plaintiff
dan@finneylawoffice.com

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was sent via the Court's electronic notification system to attorneys of record on this 12th day of October, 2018

/s/Daniel P. Finney Jr., #26389