**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JASON STOCKLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-873 CAS |
| | ) | |
| JENNIFER MARIE JOYCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on separate motions to dismiss filed by defendants Jennifer

Marie Joyce in her individual capacity, Kirk Deeken in his individual capacity, and the City of St.

Louis ("City").[1]  Plaintiff Jason Stockley opposes the motions and they are fully briefed.  For the

following reasons, the defendants' motions to dismiss will be granted.

### I.  Background

Plaintiff Jason Stockley, a former police officer for the City, brings this action pursuant to

42 U.S.C. § 1983 and Missouri law to recover damages arising from events concerning his

prosecution for the alleged first-degree murder of Anthony Smith that ended in plaintiff's acquittal.

In his First Amended Complaint ("complaint"), plaintiff asserts multiple claims under § 1983

against Joyce, Deeken, and the City (Count I); § 1983 Monell claims against the City and Joyce in

her official capacity (Count II)[2]; a state law defamation claim against Joyce in her individual and

---

[1]The Court interprets all of plaintiff's claims alleged against defendants Joyce and Deeken in their official capacities as claims against the City.  See Memorandum and Order of September 10, 2018 (Doc. 37).  As a result, with respect to plaintiff's official-capacity claims asserted against Joyce, the Court reviews only the arguments asserted by the City in its motion to dismiss, and not the official-capacity arguments made in defendant Joyce's briefing filed by her individual counsel.

[2]Monell v. Department of Social Servs. of City of New York, 436 U.S. 658 (1978).

official capacities (Count III); and a state law malicious prosecution claim against Deeken in his individual and official capacities (Count IV).

The Court has both federal question and diversity of citizenship jurisdiction over this matter, as plaintiff asserts federal claims, 28 U.S.C. § 1331, and the parties are citizens of different States and more than $75,000 is in controversy, 28 U.S.C. § 1332(a)(1).[3]

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., and "raise[s] a right to relief above the speculative level." Twombly, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported

---

[3]"It is well settled that for the purposes of diversity of citizenship, political subdivisions are citizens of their respective States." Illinois v. City of Milwaukee, 406 U.S. 91, 97 (1972); see also Public Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co., 640 F.3d 821, 826-27 (8th Cir. 2011) (political subdivisions such as municipal corporations are not arms of the State).

by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.

While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, they may also consider exhibits and documents attached to a complaint. See Brown v. Green Tree Servicing LLC, 820 F.3d 371, 373 (8th Cir. 2016); Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012). Here, the Court will consider the state court criminal complaint and probable cause statement attached as exhibits to the complaint.

Defendant Joyce also moves to dismiss certain of plaintiff's claims on the basis of absolute prosecutorial immunity. The Rule 12(b)(6) inquiry is distinct from the question of absolute immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 274 n.5 (1993) (noting the court below incorrectly "conflate[d] the question whether a § 1983 plaintiff has stated a cause of action with the question whether the defendant is entitled to absolute immunity for [her] actions.").

**III. Discussion**

A. Defendant Joyce in her Individual Capacity's Motion to Dismiss

Defendant Joyce moves to dismiss all of plaintiff's claims against her for failure to state a claim upon which relief can be granted, and to dismiss plaintiff's claims related to her pursuit of plaintiff's criminal prosecution on the basis of absolute prosecutorial immunity.

1. *Section 1983 Claims - Count I*

a. Plaintiff's Allegations

Plaintiff's complaint recites facts relating to the events of December 20, 2011, when plaintiff was on duty as a St. Louis City police officer. Plaintiff alleges that he and his partner were in a police vehicle when they observed what they believed to be a hand-to-hand drug transaction

occurring outside of a fast-food restaurant. Plaintiff's partner attempted to block the vehicle of one of the suspected participants in the transaction, later determined to be Anthony Smith, and plaintiff and his partner exited their police vehicle. Mr. Smith began to maneuver his car out of its space by moving it backward and forward, striking the police vehicle and another car in the process. Plaintiff's partner broke the driver's side window of Mr. Smith's car with his weapon, saw a handgun inside the vehicle and yelled, "Gun!" Mr. Smith was able to extricate his car from its parking space, and the passenger side of Mr. Smith's car struck plaintiff as Mr. Smith accelerated off of the parking lot. Plaintiff alleges he saw Mr. Smith holding a silver handgun near the front passenger seat. Mr. Smith drove at high speeds in city traffic with plaintiff and his partner in pursuit. Mr. Smith eventually crashed his car and plaintiff directed his partner to drive the police vehicle into the rear of Mr. Smith's car. Plaintiff alleges that after the crash, he and his partner got out of their vehicle and plaintiff approached the driver's door. Plaintiff alleges that for fifteen seconds he gave commands directing Mr. Smith to show his hands and get out of the car, but Mr. Smith did not comply and eventually leaned toward the right side of the car, whereupon plaintiff shot Mr. Smith five times, killing him. Complaint, ¶¶ 8-13.

Plaintiff alleges that St. Louis Police Department homicide detectives and other police officials conducted an investigation into Mr. Smith's death during 2011 and 2012, and found no basis to criminally prosecute him. Defendant Joyce was the City's elected Circuit Attorney and chief prosecutor at the time and declined to prosecute plaintiff after reviewing the evidence. The United States Attorney and the Federal Bureau of Investigation also conducted investigations into Mr. Smith's death, and reviewed all of the available evidence including laboratory reports. This evidence included a laboratory determination that plaintiff's DNA was present on the gun removed from Mr. Smith's car, but Mr. Smith's DNA was not on the gun. The United States Attorney

declined to prosecute plaintiff. Mr. Smith's death was also investigated by the United States Department of Justice Civil Rights Division, which found no basis for prosecution. Defendant Joyce reviewed the evidence gathered by federal investigators and declined to prosecute plaintiff. Complaint, ¶¶14-15. Plaintiff alleges that no new evidence appeared after these investigations to indicate he committed a crime in connection with Mr. Smith's death. Id. ¶ 16.

Plaintiff alleges that a subsequent police shooting in October 2014 that killed Vonderrit Myers was investigated by the Circuit Attorney's Office and the St. Louis Police Department's Force Investigation Unit ("FIU"), which had been recently created to investigate shootings by police officers. In May 2015, Joyce issued a written report based on the FIU's analysis and recommendation concerning the Myers shooting, and relying on the FIU investigation declined to prosecute the officer. Subsequently, activists demonstrated at Joyce's home in May 2015 protesting her decision not to prosecute the officer in the Myers shooting, putting her in great fear. Activists demonstrated at City Hall in April 2016 protesting Joyce's decision not to prosecute plaintiff for Mr. Smith's death. Plaintiff alleges these protests alarmed and intimidated Joyce, who met with protest leaders in May 2016 and informed them she would be charging plaintiff with first degree murder in the immediate future. Complaint, ¶¶ 17-20.

Plaintiff's lengthy and detailed complaint is not a model of pleading clarity. It asserts detailed facts concerning numerous allegedly improper actions by Joyce, including the misrepresentation and withholding of evidence in the probable cause statement submitted to the state court seeking a warrant for plaintiff's arrest, id. ¶¶ 25-29; and intentionally misrepresenting multiple pieces of evidence to the grand jury to secure plaintiff's indictment, id. ¶¶ 30-61. Plaintiff affirmatively states, however, that Joyce is "absolutely immune from civil liability for certain actions and omissions attributed" to her therein, but further states that he pleads the acts and omissions for

which she is immune to "show the intent and consequences of conduct and omissions for which Ms. Joyce . . . do[es] not enjoy absolute immunity[.]" Id. ¶ 87.[4]

In his opposition memorandum, plaintiff clarifies that his § 1983 claim against Joyce asserts substantive due process violations based on two actions: (1) Joyce's effective termination of the new investigation into Mr. Smith's death by the St. Louis Police Department FIU, and (2) Joyce's public comments in 2016 that there was "new evidence" plaintiff committed a crime in connection with Mr. Smith's death. (Doc. 49 at 1, 3-4.) The Court therefore limits its discussion and analysis to these two claims.

With respect to these claims, the complaint alleges that Joyce "elected to bypass investigation of Mr. Smith's death by the [FIU] . . . and charge [plaintiff] with first degree murder and armed criminal action" even though a protocol Joyce previously established for the investigation of police shootings required the FIU to investigate before any prosecutorial decision was made to initiate criminal charges. Id. ¶ 21. Plaintiff alleges the officers in the FIU assigned to reopen the investigation had the police file on Mr. Smith's death for only one day "when they were instructed to return the file because Ms. Joyce intended to charge [plaintiff] with murder no matter what they found or recommended." Id. Plaintiff does not allege who instructed the FIU to return the file. Plaintiff also alleges:

> By *co-opting any reinvestigation of Mr. Smith's death during 2016, Ms. Joyce violated the Circuit Attorney's own protocol of having all police shootings investigated first by the [FIU], [p]recluded any true reinvestigation at all, conducted her own sham investigation or no investigation at all*, and avoided a finding by the [FIU] that [plaintiff] had committed no crime and that no prosecution was warranted. Such a finding was inevitable in view of the facts that there was no new evidence and

---

[4]In his opposition memorandum, plaintiff reiterates the statement made in his complaint acknowledging that Joyce is absolutely immune for misrepresentations made to secure a warrant for his arrest and for statements made to the grand jury. (Doc. 49 at 9.)

every local and federal investigative agency and prosecuting authority that reviewed the existing evidence concluded that prosecution was not warranted. Such a finding would have avoided the constitutional wrongs and damage alleged herein by highlighting the self-interests and prevarications upon which the charging and prosecution of [plaintiff] were based and precluding the issuance of a warrant for [plaintiff]'s arrest, the return of an indictment charging him with the commission of felonies in connection with Mr. Smith's death, and the unsuccessful first degree murder prosecution that ensued.

Ms. Joyce *intentionally rigged and manipulated the reinvestigation of [plaintiff] that she purportedly conducted during 2016* to ensure [plaintiff's] arrest, indictment, and trial on charges of first degree murder and armed criminal action, despite her knowledge that the charges were unfounded. In particular Ms. Joyce:

a. *Caused an investigation by the St. Louis Police Department's [FIU] to be shut down* in order to insure that her self-serving sham investigation was not exposed and derailed through fair and competent investigation by the specialized police department unit.

Complaint, ¶¶ 88-89.a (italics added).

Plaintiff also alleges that Joyce announced in one or more press conferences and public declarations that "through her own investigation she had found 'new evidence' proving that [plaintiff] murdered Mr. Smith." Id. ¶ 22. Joyce's claim there was "new evidence" was false, as the evidence analyzed in 2011 and 2012 was deemed insufficient to justify criminal charges then, and Joyce "never had 'new evidence' discovered after 2012 capable of justifying or proving a first degree murder charge" against plaintiff. Id. ¶¶ 22; 62. Joyce later made a public statement that she brought charges against plaintiff "because she had . . . 'newly available evidence.'" Id. ¶ 64. Plaintiff alleges that the only "new evidence" or "newly available evidence" mentioned by Joyce "included the DNA tests" showing the absence of Mr. Smith's DNA on the gun retrieved from his car, id. ¶¶ 66-67, and "the cell phone video of Antonio French" which plaintiff alleges Joyce did not see until weeks after she charged him. Id. ¶¶ 68-69. Plaintiff also alleges Joyce made repeated public statements that she "had not seen the in-dash video from [plaintiff]'s police vehicle until April

2016, right before she charged [plaintiff], which justified the change in her decision to now bring charges and proved [plaintiff] murdered Smith," though Joyce had seen the video in 2012 and again in 2013.  Id. ¶¶ 72-73.

Plaintiff alleges that Joyce's "intentional and knowing promulgation and publication of the false claim that she had discovered 'new evidence' proving [plaintiff] guilty of first degree murder" served her personal interests by appeasing protest leaders, enhancing her reputation prior to establishing a private consultancy after she left office, and "[d]emonstrating . . . her technique for and skill at inculcating anti-defendant prejudice within a community prior to the commencement of criminal proceedings."  Complaint ¶¶ 90-91.

Plaintiff alleges that as a result of Joyce's "bogus investigation and predetermined decision to charge [him] despite the absence of evidence sufficiently probative of guilt," he was subjected to the risk of wrongful conviction and imprisonment, anxiety, emotional distress, physical illness during the pendency and trial of the murder charge, and expenses.  Plaintiff alleges he was "deprived of his right to due process and fair treatment by police and prosecuting authorities in [sic]."  Id. ¶ 93.

b.  Absolute Prosecutorial Immunity

The Supreme Court has observed that a "defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate[.]"  Imbler v. Pachtman, 424 U.S. 409, 425 (1976).  In Imbler, the Supreme Court expanded the doctrine of absolute judicial immunity and held that prosecutors are absolutely immune from liability under § 1983 for their actions in "initiating a prosecution and in presenting the State's case," id., at 431, to the extent those actions are "intimately associated with the judicial phase of the criminal process," id. at 430; Burns v. Reed, 500 U.S. 478, 487 (1991).  The Supreme Court declined to decide if absolute immunity extends to "those aspects of the prosecutor's responsibility that cast him in the

role of an administrator or investigative officer rather than that of an advocate," <u>Imbler</u>, 424 U.S. at 430-31, but acknowledged that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." <u>Id.</u> at 431, n.33. Subsequent cases have clarified the scope of absolute immunity for prosecutors to include "[a]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [their] role as an advocate of the State." <u>Buckley</u>, 509 U.S. at 273. A prosecutor is not entitled to absolute immunity if his or her conduct is administrative or investigative in nature, however, but instead only to qualified immunity. <u>Id.</u>

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." <u>Burns</u>, 500 U.S. at 487. "It is important to determine the precise claim" that a plaintiff makes against a prosecutor. <u>Id.</u> The correct inquiry is "whether the prosecutor's actions are closely associated with the judicial process." <u>Id.</u> at 496 (holding prosecutor was entitled to absolute immunity for allegations that he facilitated the issuance of a search warrant by presenting evidence to the court knowing the witness was giving false testimony, but was not entitled to absolute immunity for providing legal advice to the police). Once a court determines that absolute immunity applies, such immunity "is not defeated by allegations of malice, vindictiveness, or self-interest." <u>Reasonover v. St. Louis County, Mo.</u>, 447 F.3d 569, 579 (8th Cir. 2006). Absolute immunity "applies even if the prosecutor's steps to initiate a prosecution are patently improper" or in the face of "[a]llegations of unethical conduct and improper motives in the performance of prosecutorial functions[.]" <u>Sample v. City of Woodbury</u>, 836 F.3d 913, 916 (8th Cir. 2016) (citing cases).

*i. Joyce Is Absolutely Immune for Terminating the FIU Investigation*

The Court concludes Joyce is entitled to absolute immunity on plaintiff's § 1983 substantive due process claim based on allegations she effectively prematurely terminated the FIU's investigation. Plaintiff's claims do not relate to action by Joyce that has qualities or attributes of a police investigative function, but rather assert that Joyce's actions served to terminate a police investigation the results of which would have precluded the filing of any charges against him, had it been allowed to progress to its conclusion.[5] Thus, plaintiff's allegations effectively claim that Joyce brought charges against him without first conducting an adequate investigation. "A prosecutor enjoys absolute immunity for acts performed 'in initiating a prosecution and in presenting the State's case.'" Reasonover, 447 F.3d at 579 (quoting Imbler, 424 U.S. at 431). A prosecutor's professional determination that sufficient evidence exists to seek criminal charges is an act undertaken in direct preparation for the initiation of judicial proceedings, and is therefore closely related to the judicial process. "Preparation both for the initiation of the criminal process and for trial, may require the obtaining, reviewing, and evaluating of evidence." Imbler, 424 U.S. at 431 n.33.

"The decision whether to bring charges–and even the decision to bring charges in the absence of adequate evidence–falls squarely within a prosecutor's role as advocate and, therefore, is protected by absolute immunity." Byrne v. City of New York, 736 F. App'x 263, 265 (2d Cir. 2018) (summary order) (citing Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004)). "Investigative acts undertaken in direct preparation of judicial proceedings, *including the*

_____

[5]The complaint does not contain any factual allegations, as opposed to mere conclusory statements as quoted above, that Joyce engaged in investigative conduct in the nature of a police investigative function.

*professional evaluation of evidence*, warrant absolute immunity . . . ." Ireland v. Tunis, 113 F.3d 1435, 1445 (6th Cir. 1997) (emphasis added) (citing Buckley, 509 U.S. at 273); see also Latta v. Chapala, 221 F. App'x 443, 445 (7th Cir. 2007) ("Deciding when the evidence is sufficient to stop investigating and seek an indictment is a standard prosecutorial function and covered by absolute immunity because–unlike searches, seizures, interrogations, and other out-of-court activity–a decision not to extend a probe does not invade the accused's extra-judicial entitlements." (citing Buckley, 509 U.S. 259).

Plaintiff's assertion that Joyce's effective termination of the police investigation should be evaluated as "investigative misconduct" is not supported by any factual allegations in the complaint, as opposed to mere conclusory statements. As stated above, the gravamen of the relevant facts pleaded in support of this claim is that Joyce bypassed or short-circuited the FIU investigation, the results of which plaintiff asserts would have precluded the filing of criminal charges against him. Plaintiff does not allege facts tending to show that Joyce engaged in investigative conduct in the nature of a police investigative function, or that she fabricated evidence against him. Plaintiff's allegation that a completed FIU investigation would have precluded the filing of any charges against him is pure speculation. Plaintiff's contorted argument that Joyce's termination of the investigation equates to the intentional suppression of evidence is unsupported and unpersuasive. Further, even if plaintiff alleged facts tending to show that Joyce knowingly suppressed exculpatory evidence, she would be absolutely immune. See Reasonover, 447 F.3d at 580. That plaintiff ascribes improper and personal motives for Joyce's action is of no consequence, because absolute immunity provides

complete protection from judicial scrutiny of the motives for her alleged actions.[6] Sample, 836 F.3d at 916.

Plaintiff's § 1983 substantive due process claim against Joyce based on her effective termination of the FIU investigation will be dismissed on the basis of absolute immunity.

*ii. Joyce is Not Absolutely Immune for Statements to Media and Public*

Plaintiff also alleges that Joyce violated his substantive due process rights when she made false statements to the media and public that she had "new evidence" plaintiff committed a crime when he shot and killed Mr. Smith. Joyce asserts that she is entitled to absolute immunity on this claim. The Court disagrees. In Buckley, the Supreme Court held that prosecutors are not entitled to absolute immunity for out-of-court statements to the press. 509 U.S. at 278. "Comments to the media have no functional tie to the judicial process because they are made by a prosecutor." Id. at 277. The Supreme Court explained that absolute immunity is not appropriate because "[t]he conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." Id. at 278. Prosecutors are entitled only to qualified immunity, rather than absolute immunity, for statements to the press. Id.

The Court finds that Joyce's press conference or other media or public statements were part of an administrative duty, and not incidental to the performance of her duties as an advocate. As a result, the statements are not entitled to absolute immunity. Joyce's motion to dismiss this claim on the basis of absolute immunity will therefore be denied. Because Joyce did not raise a qualified

---

[6]Nor can plaintiff base a § 1983 claim on Joyce's alleged violation of internal Circuit Attorney's Office procedures she established for the investigation of police shootings. The existence of such procedures does not confer any substantive right upon plaintiff or give rise to a protected liberty interest. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam).

immunity defense in her motion to dismiss, the Court does not address whether she might be entitled to qualified immunity for her statements to the media and public.

### c. Plaintiff Fails to State a Substantive Due Process Claim Based on Joyce's Comments to the Media and Public

Joyce also moves to dismiss plaintiff's § 1983 substantive due process claim based on her public statements under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted. Joyce argues that these allegations attempt to shoehorn a defamation claim into a § 1983 claim, but defamation per se is not actionable under § 1983, citing <u>Underwood v. Pritchard</u>, 638 F.2d 60, 61 (8th Cir. 1981) (citing <u>Paul v. Davis</u>, 424 U.S. 693, 701-02 (1976)).

Plaintiff responds that Joyce's conduct in making false statements to the media and public violated his substantive due process rights, but his arguments in opposition focus primarily on his allegations that Joyce effectively terminated the FIU investigation. Plaintiff does not articulate how Joyce's public statements support his constitutional claim. Implicit in this aspect of plaintiff's complaint is the contention there was no factual basis for the murder charges filed against him, and that Joyce knowingly made false public claims of new evidence for improper, self-serving reasons, to support her implied assertion that plaintiff was guilty of murdering Mr. Smith.

"In the context of substantive due process, an individual must overcome a very heavy burden to show a violation of the Fourteenth Amendment." <u>Hall v. Ramsey County</u>, 801 F.3d 912, 917 (8th Cir. 2015). "To establish a substantive due process violation, [plaintiff] must demonstrate that a fundamental right was violated and that [Joyce's] conduct shocks the conscience." <u>Folkerts v. City of Waverly, Ia.</u>, 707 F.3d 975, 980 (8th Cir. 2013). Plaintiff's complaint does not identify what fundamental right was violated by Joyce's alleged false statements to the media and public.

"[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) ("[S]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (internal quotations omitted) (quoted case omitted).

"Whether conduct shocks the conscience is a question of law." Folkerts, 707 F.3d at 980 (citing Terrell v. Larson, 396 F.3d 975, 981 (8th Cir. 2005) (en banc)). "[T]o 'shock the conscience,' it is not enough that the government official's behavior meets the 'lowest common denominator of customary tort liability.'" White v. Smith, 696 F.3d 740, 757 (8th Cir. 2012) (quoting Lewis, 523 U.S. at 848-49). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

As Joyce asserts, the gravamen of plaintiff's claim based on her comments to the media and public appears to be defamation. Defamation by itself is insufficient to support a claim under § 1983. Paul, 424 U.S. at 701; see Wade v. Goodwin, 843 F.2d 1150, 1152 (8th Cir. 1988) (a cause of action for damage to character or reputation is not cognizable under § 1983). In Paul, the Supreme Court concluded that a person's interest in his reputation is not considered liberty or property protected by the Due Process Clause. Paul, 424 U.S. at 701. The Eighth Circuit, relying on Paul, held that a person's reputation is not a property or liberty interest protected by the Fourteenth Amendment, and that "allegations of a loss of business as a result of the damage to

14

[one's] reputation, without more, does not change this conclusion." Green v. DeCamp, 612 F.2d 368, 370 (8th Cir. 1980). See also Gunderson v. Hvass, 339 F.3d 639, 644 (8th Cir. 2003) ("The loss of reputation must be coupled with some other tangible element to rise to the level of a protectible property interest. Sometimes this is referred to as the 'stigma plus' test") (internal citation omitted); Mangan v. Cullen, 870 F.2d 1396, 1399 (8th Cir. 1989) ("To establish a liberty interest under the Fourteenth Amendment for injury to reputation a party must show not only that he was stigmatized but also that he was stigmatized in connection with a denial of a right or status previously held under state law."); Wade, 843 F.2d at 1152 (plaintiff's claim of injury to his ability to make a living did not implicate any state action beyond the alleged general injury to his reputation).

Plaintiff's § 1983 claim based on Joyce's comments to the media and public fails to satisfy the "stigma plus" test, as he fails to allege facts showing that the comments deprived him of any liberty or property interest protected by the Due Process Clause. It therefore fails to state a claim upon which relief can be granted and the motion to dismiss should be granted.

In the alternative, assuming without deciding that plaintiff's allegations show the violation of some fundamental right, the Court holds as a matter of law that plaintiff's substantive due process claim fails because the alleged conduct on which plaintiff relies does not rise to the level of being "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." See Lewis, 523 U.S. at 847 n.8. Plaintiff's allegations do not allege a most severe violation of individual rights resulting from the brutal and inhumane abuse of official power unjustified by any governmental interest. As discussed *infra* at § B.2.b.*i.*, the Court concludes that probable cause existed to charge plaintiff with first-degree murder. There is clearly a strong governmental interest associated with bringing charges against persons who commit criminal acts. As a result, the Court

will grant Joyce's Rule 12(b)(6) motion to dismiss plaintiff's § 1983 claim based on her public statements, for failure to state a claim upon which relief can be granted.

### 2. *State Law Defamation Claim Against Joyce*

#### a. The Complaint's Allegations

In Count III of the complaint, plaintiff alleges that Joyce engaged in a "publicity campaign during 2016, in which she repeatedly published false statements to news reporters and the public regarding the existence of 'new evidence' that would prove [plaintiff] guilty of first degree murder, caused great and lasting damage to [plaintiff's] reputation and ability to find employment, as well as mental anguish and attendant physical harm." Complaint ¶ 110. Count III incorporates all other allegations of the complaint. Id. ¶ 108. Other relevant paragraphs of the complaint allege that Joyce "announced at one or more press conferences and in one or more public declarations that through her own investigation she had found 'new evidence' proving that [plaintiff] murdered Mr. Smith" but her "claim of 'new evidence' was false," id. ¶ 22; made "false declarations authoritatively assuring the public that she had new proof that [plaintiff] had committed premeditated murder . . ." id. ¶ 24; "initiated a public relations strategy . . . consist[ing] of a series of announcements that she had obtained 'new evidence' proving that [plaintiff] murdered Mr. Smith," id. ¶ 62; "announced in a public statement and to the Court that she brought charges in 2016 because she had new evidence which she later changed to 'newly available evidence.' (St. Louis American May 26, 2016)", id. ¶ 64; "claimed repeatedly and stated to the public that she had not seen the in-dash video from Stockley's police vehicle until April 2016, right before she charged Stockley, which justified the change in her decision to now bring charges and proved Stockley murdered Smith. (St. Louis Post Dispatch May 17, 2016)", id. ¶ 72; "claimed there was new evidence, not available to the FBI or the Department of Justice, or her own office when they originally declined to prosecute in 2012, and that

new evidence persuaded her to charge [plaintiff] in 2016," id. ¶ 76, her "gratuitous administrative statement to a major media outlet suggesting that the police video now was new evidence warranting [plaintiff's] prosecution was false and defamatory," id. ¶ 84; "[t]hrough her intentional and knowing promulgation and publication of the false claim that she had discovered 'new evidence' proving [plaintiff] guilty of first degree murder, Ms. Joyce intentionally caused this untrue and misleading information to be disseminated throughout the City of St. Louis, the metropolitan St. Louis area and the nation," id. ¶ 90; and "publi[shed] false and misleading statements suggesting that 'new evidence' proved [plaintiff's] guilt when the 'old evidence' consistently had been found insufficient to warrant charging him with any crime." Id. ¶ 100.b.

b. The Parties' Arguments

Joyce moves to dismiss Count III for failure to state a claim upon which relief can be granted, arguing plaintiff fails to state a claim for defamation under Missouri law for the following reasons: (1) the Missouri Supreme Court requires that the specific words alleged to be defamatory be set forth, citing Missouri Church of Scientology v. Adams, 543 S.W.2d 776 (Mo. 1953) (en banc), but the complaint fails to quote Joyce's allegedly defamatory statement other than the words "new evidence" along with an unattributed statement that the new evidence proves plaintiff murdered Mr. Smith; because plaintiff does not provide a direct quote of the alleged defamatory statement, the Court cannot review it in context as required by relevant analytical standards; (2) the alleged statement that Joyce discovered "new evidence" in the case against plaintiff is not defamatory as it does not by itself tend to disgrace or degrade plaintiff or expose him to public hatred, contempt, or ridicule, or cause him to be shunned or avoided; and (3) plaintiff admits the allegedly defamatory statement that Joyce discovered "new evidence" was true, as plaintiff alleges the "new evidence" discovered was the absence of Mr. Smith's DNA on the gun recovered from his

car, complaint ¶ 66, but does not allege this statement was false because Joyce had not newly learned of the absence of DNA, and instead alleges the absence of DNA was "meaningless." Id. ¶ 67.

Plaintiff responds that the complaint alleges only oral statements by Joyce to the media and public, i.e., slander, and the requirement that a claim for defamation must set forth the offending statement *in haec verba* applies only to libel claims, not slander, citing Nazeri v. Missouri Valley College, 860 S.W.2d 303, 313 (Mo. 1993) (en banc).[7] Without citing any factual allegation in the complaint, plaintiff further responds that Joyce told the media and public she had "new evidence" that would prove plaintiff murdered Mr. Smith, which defamed plaintiff and harmed his reputation by asserting he was guilty of murder, citing Hohlt v. Complete Health Care, Inc., 936 S.W.2d 223, 224 (Mo. Ct. App. 1996) (statement charging a person is guilty of a criminal offense is defamatory). Finally, plaintiff responds that Joyce's argument he concedes her statement of "new evidence" was true is "astonishing" (Doc. 49 at 17), as the "complaint alleges, and as prosecutors and police know, 'DNA often is not recovered from guns [and] is not always shed by an individual touching an object, and . . . the absence of DNA from an item is incapable of proving that a particular individual did not touch that item.'" (Id., quoting complaint ¶ 15.) Plaintiff also argues that Mr. Smith's DNA did not disappear from the gun between the initial investigations in 2011 and 2012 and Joyce's announcement of "new evidence" several years later. (Id.)

c. Discussion

"Defamation law protects an individual against harm to his or her reputation." Smith v. Humane Society of United States, 519 S.W.3d 789, 798 (Mo. 2017) (en banc) (quoting Henry v.

---

[8]In general, libel refers to defamatory statements that are written, whereas slander refers to defamatory statements that are spoken. 50 Am. Jur. 2d Libel and Slander § 6 (2017); see Nazeri v. Missouri Valley College, 860 S.W.3d 303, 313 (Mo. 1993) (en banc).

Halliburton, 690 S.W.2d 775, 779 (Mo. 1985) (en banc)).  Under Missouri law, "To prevail on a defamation claim, both public-figure and private-figure plaintiffs must prove 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation."  Smith, 519 S.W.3d at 798 (quoting Farrow v. Saint Francis Med. Ctr., 407 S.W.3d 579, 598-99 (Mo. 2013) (en banc) (cleaned up)).

"A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to defer third persons from associating or dealing with him." Henry, 690 S.W.2d at 789 (quoting Restatement (Second) of Torts § 559).  Determining whether allegedly defamatory words are "capable of the defamatory meaning ascribed to them is a question of law for the court to decide on a motion to dismiss."  Brown v. Kitterman, 443 S.W.2d 146, 150 (Mo. 1969) (internal quotation marks and citations omitted); Henry, 690 S.W.2d at 789.

"To determine whether a statement is defamatory, 'the alleged defamatory words must be considered in context, giving them their plain and ordinarily understood meaning.'"  Smith, 519 S.W.3d at 798 (quoting Nazeri, 860 S.W.2d at 311).  "The words in an allegedly defamatory statement must 'be taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed.'"  Id. at 800 (quoting Nazeri, 860 S.W.3d at 314).  "To allow the 'breathing space' necessary for free expression and debate under the First Amendment, certain statements, such as statements of 'opinion' not provable as false, cannot be the basis of a defamation claim."  Id. at 798 (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974); New York Times Co. v. Sullivan, 376 U.S. 254, 283 (1964)).  "Whether an alleged statement is capable of being treated as an opinion or as an assertion of fact is a question of law[.]" Nazeri, 860 S.W.2d at 314.

19

As a preliminary matter, Joyce's reliance on a Missouri Supreme Court decision for the proposition the complaint is subject to dismissal because plaintiff does not allege the exact words at issue is unavailing, because this Court is not bound by pleading standards based in state law. Although plaintiff's claims are brought under state law, the Court must look to federal precedent to determine whether plaintiff has pleaded the statements with sufficient specificity. Asay v. Hallmark Cards, Inc., 594 F.2d 692, 698-99 (8th Cir. 1979) ("The manner of setting forth allegations is a matter of procedure, not substance, and a federal court cannot be bound by a state's technical pleading rules."); Supino v. Jasper Cnty., Ia., 2017 WL 6815353, at *5 (S.D. Iowa Oct. 6, 2017) (quoting Asay); Jiang v. Porter, 2015 WL 9459943, at *5 (E.D. Mo. Dec. 28, 2015) (same).

Rule 8 of the Federal Rules of Civil Procedure generally requires only a "short and plain statement of the claim." Nonetheless, an authoritative legal commentator has observed that despite the language of Rule 8, "the standard for successfully pleading defamation tends to be more stringent than that applicable to most other substantive claims because of the historically unfavored nature of this type of action, the First Amendment implications of many of these cases, and the desire to discourage what some believe to be all too frequently vexatious litigation." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1245 (3d ed.).

The Eighth Circuit has required a more stringent standard for pleading defamation claims than merely meeting Rule 8's standard. In Holliday v. Great Atlantic & Pacific Tea Company, the Eighth Circuit affirmed a directed verdict against the plaintiffs' Missouri law slander claims and stated, "In an action for slander or libel the words alleged to be defamatory must be pleaded and proved. It is also essential that it be alleged that the accusation was untrue." 256 F.2d 297, 302 (8th Cir. 1958). The Eighth Circuit affirmed because the plaintiffs merely alleged the substance of the

defamatory statements ("that plaintiff had stolen some of defendant's merchandise"), rather than the actual words used, and failed to allege the statement was false. Id.

In more recent cases, the Eighth Circuit has continued to require the pleading of defamation claims with some specificity. In Asay v. Hallmark Cards, Inc., the Court stated, "[T]he use of In haec verba pleadings on defamation charges is *favored* in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings." 594 F.2d at 699 (emphasis added) (citing Holliday, 256 F.2d at 302). The Eighth Circuit concluded the district court "could easily find that the requisite degree of specificity was absent from [the pleading] because it goes not give any indication to whom the alleged statements were made and describes the statements in vague terms." Id.

In Freeman v. Bechtel Construction Company, the Eighth Circuit affirmed dismissal of the plaintiff's libel claim as deficiently pleaded because, among other things, the complaint did not allege the specific defamatory statement or identify the persons to whom they were published. 87 F.3d 1029, 1031 (8th Cir. 1996). The Court stated the defendant was unable to "form responsive pleadings" in the absence of these allegations. Id. (quoting Asay, 594 F.2d at 699). Most recently, in Pope v. ESA Services, Inc., the Eighth Circuit affirmed the dismissal of a defamation claim that generally alleged the defendant's "agents stated to Plaintiff's co-workers that he was discharged for 'timecard fraud,'" because the claim was not pleaded with specificity and did not allege "who made the allegedly libelous statements, to whom they were made, and where." 406 F.3d 1001, 1011 (8th Cir. 2005), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc).

The Court notes that Holliday, Asay, Freeman, and Pope were all decided under the then- "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Today, the Twombly standard requires that to survive a motion to dismiss, sufficient factual allegations be pleaded to establish a claim's plausibility, which under controlling defamation law will depend on context. The Court finds it significant that the Eighth Circuit repeatedly required more specificity in pleading defamation claims than the "short and plain statement" standard of Rule 8, under a far more liberal pleading rule than presently exists.

Under federal pleading standards, district courts have required that defamation complaints plead with a degree of specificity relevant facts such as the content of the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published. For example, in Harrington v. Hall County Board of Supervisors, the district court dismissed a defamation claim that alleged the "defendant SHAY MCGOWAN told The Independent news that strip clubs, including that owned by Plaintiff, constitute the Felony of 'sex trafficking,' which is additionally defamatory," for failure to state a claim because "it lacks the level of specificity required by federal pleading standards." 2016 WL 1274534, at *12 (D. Neb. Mar. 31, 2016) (citing Asay, 594 F.2d at 699). Judge Gerrard explained:

> Here, the plaintiff has failed to identify the exact content of the statement allegedly made. For instance, it is unclear whether McGowan specifically said that the plaintiff has committed felony sex trafficking, or whether he was discussing strip clubs generally, or whether he was making a prediction about the effect of the proposed strip club, if it were to be opened in Hall County. Which particular statement is alleged could significantly alter the types of defenses that may be available to McGowan. Nor does the complaint contain information regarding the context of the alleged statement, the date the statement was allegedly made, or whether the statement was published to others. This lack of clarity is even more pronounced given the plaintiff's propensity to plead legal conclusions in lieu of factual allegations—it is simply impossible to discern whether the allegation is meant to be a literal transcription of the statement made, or whether it represents the plaintiff's attempt to persuasively characterize the statement. Accordingly, the Court

concludes that this allegation is insufficiently specific to allow the defendant to form responsive pleadings.

Id.

In Bank of Commerce & Trust Co. v. Dominique Bank of Commerce, the district court found a defamation claim was not adequately pleaded where the claimant alleged the "plaintiff has made and continues to make wildly inaccurate, baseless and false statements regarding defendant and his business practices, including, . . . that defendant had stolen or otherwise misappropriated funds from his clients [and committed other crimes]" and that "[t]hese false and defamatory statements were communicated to defendant's clients and investors, such as the First State Bank of Livingston, on multiple occasions." 2008 WL 11378844, at *2 (D. Kan. Aug. 22, 2008). The allegations were insufficient to state a claim, because the claimant "failed to allege who made the statements and to whom the statements were made" and "to give a specific time frame for the alleged statements." Id. (footnote omitted).

In contrast, in Jiang v. Porter, this Court found the plaintiff pleaded defamatory statements with sufficient particularity where the complaint alleged "ten specific statements the . . . defendants made in press releases, television interviews, and newspaper articles falsely accusing him of sexually abusing a child, causing him severe and actual reputational harm." 2015 WL 9459943, at *5. The complaint was not insufficiently definite because it also alleged that these were not the only defamatory statements made about the plaintiff. Id.

In the instant case, the complaint fails to sufficiently identify the content of the statement or statements Joyce allegedly made to permit her to form a response. The complaint alleges that Joyce publicly announced she had "new evidence" but it is unclear whether Joyce actually said the words that the new evidence *proved plaintiff murdered Mr. Smith*. It is impossible to determine from the

complaint whether the factual allegations as to Joyce's statements with respect to "new evidence" proving plaintiff guilty of murder are meant to be substantially accurate transcriptions of the literal statements Joyce made, or whether they represent plaintiff's attempt to persuasively characterize the statements. The words spoken, and the context in which they were spoken, could significantly affect the meaning of Joyce's statements and the defenses she might assert. As Joyce asserts in her second argument in support of dismissal, the words "new evidence" by themselves are not defamatory. It appears that plaintiff essentially pleads his own "conclusion as to the import [of] whatever words *may* have been used." Holliday, 256 F.2d at 302 (emphasis added).

In addition, while the complaint vaguely alleges Joyce "announced at one or more press conferences and in one of more public declarations" and made "statements to news reporters and others" that she had found "new evidence," it fails to allege facts concerning the context in which the statements were made; for example, whether Joyce was responding to media questions, and what those questions were. The complaint fails to allege the date or dates on which the statements were made, how many different statements were made, the content of each statement, and to whom the statements were made. It is also not clear whether all of the statements alleged are from media reports, or from other sources.

Plaintiff's failure to specify Joyce's allegedly defamatory statements beyond the words "new evidence" also raises an issue of materiality. The Court finds *infra* at § B.2.b.*i*. that probable cause existed for plaintiff's arrest on the charge of first-degree murder in May 2016. Given this context, if Joyce's statements that "new evidence" existed were false, they would be immaterial. See Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'") (quoted case omitted). "[T]he statement is not considered false unless it 'would have a different effect on

the mind of the [audience] from that which the pleaded truth would have produced.'" Id. (quoted sources omitted)). It is the accusation of having committed premeditated murder, not a statement that "new evidence" was found, that could "lower [plaintiff] in the estimation of the community or . . . deter third persons from associating with him." Henry, 690 S.W.2d at 788.

The Court further finds the complaint fails to allege facts tending to show that Joyce published the statements with the requisite degree of fault. Under the Supreme Court's test in New York Times Co. v. Sullivan, 376 U.S. 254, "when a public figure or official is involved in a defamation suit, a finding of defamation must be supported by clear and convincing proof that a libelous falsehood was made with actual malice—with knowledge that it was false or with reckless disregard of whether it was false or not at a time when defendant had serious doubt as to whether it was true." Bauer v. Ribaudo, 926 S.W.2d 38, 42 (Mo. Ct. App. 1996); see Missouri Approved Instruction No. 23.10(2) [1980 New]. In Missouri, law enforcement personnel such as plaintiff are public officials for purposes of applying the actual malice standard. Westhouse v. Biondo, 990 S.W.2d 68, 70-71 (Mo. Ct. App. 1999); Ramacciotti v. Zinn, 550 S.W.2d 217, 225 (Mo. Ct. App. 1977). To succeed on his defamation claim, plaintiff must therefore plead and prove by clear and convincing proof that Joyce acted with "actual malice" at the time of publication of a defamatory statement. Westhouse, 990 S.W.2d at 70; Bauer, 926 S.W.2d at 42. Plaintiff's failure to plead his defamation claim with adequate specificity extends to the element of actual malice.

The Court concludes as a matter of law that the complaint's defamation allegations are insufficiently specific to allow Joyce to form responsive pleadings and her motion to dismiss Count III for failure to state a claim will be granted.[8] The Court notes that plaintiff has not requested leave

---

[8]The Court notes that proof of damages is required in any defamation case. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 313 (Mo 1993) (en banc). Emotional distress or

to amend his allegations against defendant Joyce, much less submitted a proposed amended pleading.

B.  Defendant Deeken's Individual Capacity Motion to Dismiss

Defendant Deeken moves to dismiss all of plaintiff's claims against him for failure to state a claim upon which relief can be granted.  Deeken also moves to dismiss plaintiff's claims related to grand jury testimony on the basis of absolute immunity; claims based on Deeken's signing of the probable cause statement on the basis of qualified immunity; and state law malicious prosecution claim for failure to state a claim and on the basis of official immunity.

---

embarrassment alone is insufficient to support a defamation claim. Kenney v. Wal-Mart Stores, Inc., 100 S.W.3d 809, 817 (Mo. 2003) (en banc).  To successfully maintain an action for defamation under Missouri law, the plaintiff must allege and prove some reputational harm. Id.  Here, while the timeline is not entirely clear, it appears the complaint may allege that some of Joyce's statements were made shortly before a state court judge found probable cause existed for plaintiff's arrest on a first-degree murder charge, see, e.g., complaint ¶ 22, while other statements occurred after the warrant was issued. Id. ¶¶ 64, 72 (citing newspaper articles concerning Joyce's public statement concerning "new evidence," published well after the arrest warrant was issued).

Under these circumstances, it is doubtful plaintiff could establish reputational harm from Joyce's statements, as opposed to reputational harm from having a judge find that probable cause existed for his arrest on a first-degree murder charge.  In the complaint, plaintiff makes general allegations regarding harm to his reputation and inability to find employment as well as mental anguish and attendant physical harm, but pleads no facts tending to show these damages arise from defendant Joyce's alleged defamatory statements, and not from the warrant for his arrest, ensuing murder charge, and trial.  See Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) ("When ruling on a motion to dismiss [a tort claim], we look to whether the plaintiffs' allegations suffice to show the required causal connection between the defendant's wrongful conduct and the plaintiffs' losses."); King v. Union Station Holdings, LLC, 2012 WL 5351598, at *5 (E.D. Mo. Oct. 30, 2012) (dismissing defamation claim under Missouri law for, among other things, insufficient allegations regarding damages).

1.  *Section 1983 Substantive Due Process Claim - Count I*

    a.  Plaintiff's Allegations

The complaint alleges Deeken is a St. Louis Metropolitan Police Department ("SLMPD") lieutenant who once supervised plaintiff and has demonstrated animosity toward him.  Complaint ¶ 7.  Deeken was a sergeant in the SLMPD's Internal Affairs Division in 2012 when federal and state investigative teams investigated Mr. Smith's death.  Id. ¶ 15.  In 2012, Deeken went to the St. Louis Circuit Attorney's Office and "presented all the facts and played the in-car [dash camera] videos." id. ¶ 74.

On May 12, 2016, Deeken signed a probable cause statement under oath as to plaintiff, which was prepared by defendant Joyce.  Id. ¶ 25; Ex. A at 2.  The substantive portion of the probable cause statement reads in pertinent part:

> After shooting at the victim Anthony Smith's car at Riverview and Thekla, the Defendant former police officer Jason Stockley and another police officer chased the victim at speeds over 80 miles per hour.  The Defendant was the passenger in the police SUV.  While in pursuit, the police SUV crashed, backed up and continued following Smith's vehicle.  During the pursuit, the defendant is heard saying "going to kill this motherfucker, don't you know it."  *The victim's car was slowing to a stop*.  At that time, the Defendant is heard telling the other police officer to "Hit him right now" at which point the driver slams the police SUV into the victim's car.  The Defendant then approached the victim's car on the driver's side and shot five times into the car, striking the victim Anthony Smith with each shot.  The victim died as a result of the gunshot wounds.  A gun was recovered from the victim's car but was later determined by lab analysis to have only the Defendant's DNA on it.

(Doc. 15, Ex. A at 2) (emphasis added).

Plaintiff alleges that Joyce and Deeken "conspired to procure an arrest warrant by omitting material facts from the probable cause statement" although they were familiar with the facts and knew they should have been included in the probable cause statement to provide the state court judge with a fair and complete factual basis for determining whether there was probable cause to

believe Mr. Smith had been murdered.[9] Complaint ¶ 26. Specifically, plaintiff alleges the following facts were omitted from the probable cause statement:

(a) Plaintiff suspected Mr. Smith was conducting drug sales when he was first approached by plaintiff and his partner on a Church's Chicken lot;

(b) Plaintiff and his partner both said they saw a gun in Mr. Smith's car at the Church's Chicken lot;

(c) Mr. Smith hit two vehicles including the police vehicle while fleeing and initiating a high speed chase from the Church's Chicken lot;

(d) Mr. Smith narrowly missed hitting plaintiff with his car as he drove off of the Church's Chicken lot;

(e) There was a warrant out for Mr. Smith's arrest, of which Smith was aware;

(f) Plaintiff spent 15 seconds at the driver's side window of Mr. Smith's vehicle giving verbal commands which Mr. Smith ignored prior to any shots being fired;

(g) At the time of the shooting, plaintiff can be seen on the police in-dash camera video jumping backwards while discharging his weapon;

(h) Plaintiff thought Mr. Smith was reaching for the gun by leaning to his right;

(i) DNA is rarely recovered from a gun; and

(j) Mr. Smith's criminal history included possession of weapons, drugs, and vehicle pursuits; he was known to carry a gun for protection; he stole guns and sold them on the street; he had prior convictions for felony gun and drug charges; and he repeatedly led police on high speed chases since being released from prison seven months earlier.

_____

[9]As discussed above, Joyce is absolutely immune for her conduct in connection with the probable cause statement and plaintiff does not assert a claim against her with respect to it.

Complaint ¶¶ 26.a.-j.

Plaintiff alleges that "in furtherance of their conspiracy to see [plaintiff] prosecuted for first degree murder" Joyce and Deeken "deliberately misrepresented Mr. Smtih's [sic] actions the actions [sic] that the police officers saw Mr. Smith take as the pursuit reached its conclusion, misleading the Court with respect to its arrest warrant decision," specifically by falsely attesting that Mr. Smith was slowing his vehicle to a stop, when the police in-dash camera showed that Mr. Smith slammed into a curb at a high rate of speed after steering into oncoming traffic and narrowly avoiding collisions with other vehicles, and that Smith's brake lights were never illuminated before he hit the curb. Id. ¶¶ 27, 27.a. Plaintiff also alleges he and his partner did not know Mr. Smith was unable to drive his vehicle further immediately after he crashed into the curb. Id. ¶ 27.b.

Plaintiff alleges the probable cause statement was misleading and false and sought to fool a judge into believing Mr. Smith was surrendering, and thus suggested plaintiff "became a provocateur and assassin rather than truthfully stating that he was reacting professionally to the patent desperation that Mr. Smith exhibited and the profound threat to public and police welfare that his conduct represented." Id. ¶ 28. Plaintiff alleges that but for Joyce and Deeken's "conspiracy and their actions prior to the commencement of the judicial proceeding," his arrest and prosecution would not have occurred. Id. ¶ 29. In Count I, plaintiff alleges that Deeken knowingly and intentionally "attested to false and intentionally misleading information as set forth in this complaint in order to support findings of probable cause and the issuance of a warrant for [plaintiff's] arrest and . . . indictment," and "withheld information inconsistent with probable cause findings, criminal charges, or prosecution of" plaintiff to secure plaintiff's wrongful arrest and prosecution, despite Deeken's knowledge that police and prosecuting agencies declined to prosecute plaintiff after prior investigations, and that there was no new evidence against him. Id. ¶ 94. Plaintiff alleges that this

conduct caused his wrongful arrest and prosecution, and deprived him of "his right to due process and fair treatment by police and prosecuting authorities in violation of his right to due process under U.S. Const. amend. XIV." Id. ¶ 95.

The complaint also asserts numerous detailed facts about Deeken allegedly providing multiple instances of false and/or misleading testimony and evidence to the state court grand jury to secure plaintiff's indictment, id. ¶¶ 30-61. Plaintiff affirmatively states, however, that Deeken is "absolutely immune from civil liability for certain actions and omissions attributed" to him in the complaint, and that he pleads the acts and omissions for which Deeken is immune to "show the intent and consequences of conduct and omissions for which . . . Lt. Deeken do[es] not enjoy absolute immunity[.]" Id. ¶ 87.

In his opposition memorandum, plaintiff expressly clarifies that his § 1983 claim against Deeken in Count I asserts a substantive due process violation based on misrepresentation of and suppression of information in the probable cause statement to obtain a warrant for plaintiff's arrest. (Doc. 48 at 7-9). Plaintiff does not assert a procedural due process claim, nor does he claim a violation of his Fourth Amendment rights. Plaintiff concedes that Deeken is entitled to absolute immunity for his grand jury testimony, see Briscoe v. Lahue, 460 U.S. 325, 326 (1983), but states he includes factual allegations concerning that testimony as "further evidence that the probable cause affidavit and the withholding of vital details attending the encounter between police and Mr. Smith was deliberate and intended to mislead the court and obtain an arrest warrant despite the absence of probable cause." (Doc. 48 at 2.)

The Court will not address Deeken's motion to dismiss plaintiff's claims related to his on grand jury testimony on the basis of absolute immunity, as plaintiff does not assert such a claim. The Court limits its discussion and analysis to plaintiff's substantive due process claim based on

Deeken's alleged misrepresentation of and suppression of information to obtain a warrant for plaintiff's arrest.[10]

b. The Parties' Arguments

Defendant Deeken moves to dismiss Count I arguing plaintiff's § 1983 substantive due process claim fails to state a claim upon which relief can be granted, because the probable cause statement he signed established sufficient indicia of probable cause for an arrest warrant to issue, citing Kiesling v. Holladay, 859 F.3d 529, 534 (8th Cir. 2017). Deeken argues that under Kiesling, when a seizure is conducted pursuant to a duly issued warrant, the applying officer is entitled to qualified immunity unless it was "entirely unreasonable" for the office to believe the warrant application established probable cause. Id. (citing Messerschmidt v. Millender, 565 U.S. 535, 556 (2012)). Deeken also argues he is entitled to qualified immunity on plaintiff's substantive due process claim.

---

[10]The complaint uses the words "conspiracy" and "conspired" on multiple occasions, but plaintiff does not contend in his opposition memoranda that he asserts a § 1983 conspiracy claim. The Court finds the complaint fails to allege such a claim. "To prove a § 1983 conspiracy claim, [the plaintiff] must prove: (1) that the defendants conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured him." Bonenberger v. St. Louis. Metro. Police Dep't, 810 F.3d 1103, 1109 (8th Cir. 2016) (cleaned up). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (internal citations omitted). "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Id. Here, the complaint includes no facts suggesting the individual defendants reached an agreement; instead, it relies on conclusory allegations that the defendants took actions in furtherance of their conspiracy to see plaintiff charged and prosecuted for the crime, see complaint ¶¶ 24, 26, 27, 86, 96. Because plaintiff does not "point[] to at least some facts which would suggest that [Joyce and Deeken] reached an understanding to violate [his] rights," he has not sufficiently alleged a conspiracy." Jensen v. Henderson, 315 F.3d 854, 862 (8th Cir. 2002)." Johnson v. Perdue, 862 F.3d 712, 717-18 (8th Cir. 2017).

Plaintiff responds that the complaint states a § 1983 substantive due process claim because it alleges Deeken misrepresented information in the probable cause statement and suppressed exonerating information in order to obtain a warrant for his arrest that no reasonable, informed judge would have issued.  Plaintiff cites <u>Moran</u>, 296 F.3d at 647, for the proposition that an allegation of police conduct "designed to falsely formulate a pretense of probable cause" states a substantive due process claim, and <u>Livers v. Schenck</u>, 700 F.3d 340, 354 (8th Cir. 2012) ("the Fourteenth Amendment's guarantee of due process is violated by the 'false formulation' of 'a pretense of probable cause.'") (quoting <u>Moran</u>, 296 F.3d at 647) (cleaned up).  Plaintiff argues Deeken is not entitled to qualified immunity because a police officer's purposeful exclusion of evidence suggesting a defendant's innocence is indicative of reckless or intentional failure to investigate that "shocks the conscience," citing <u>Akins v. Epperly</u>, 588 F.3d 1178, 1184 (8th Cir. 2009).

Deeken replies that here, unlike <u>Moran</u>, plaintiff makes no allegation that Deeken manufactured or falsified evidence, and plaintiff does not dispute he fired the shots that killed Mr. Smith, or that he announced he was "going to kill this motherfucker, don't you know it," prior to shooting Mr. Smith.  Deeken asserts that plaintiff does not identify any material misrepresentations in the probable cause statement and cites no case in which a court found a substantive due process violation based on a probable cause statement's insufficient recitation of the "totality of the circumstances."  Deeken argues that the complaint actually alleges prosecution without probable cause, which does not give rise to a substantive due process violation, citing <u>Albright v. Oliver</u>, 510 U.S. 266 (1994).

Deeken argues that in contrast to the circumstances in <u>Moran</u>, plaintiff's allegation that the probable cause statement failed to adequately describe the totality of the circumstances amounts to a mere allegation that Deeken participated in a "weakly supported prosecution."  (Doc. 52 at 3

(quoting <u>Moran</u>, 296 F.3d at 647).) Deeken asserts that plaintiff's allegations are insufficient to state a substantive due process claim because he does not allege facts showing Deeken fabricated evidence or otherwise engaged in conduct that shocks the conscience, as only the most severe violations of individual rights resulting from the "brutal and inhumane abuse of official power" rise to the level of conscience-shocking violations, citing <u>White</u>, 696 F.3d at 754, 757.

      c. <u>Discussion</u>

            i. *Plaintiff Fails to State a Substantive Due Process Claim against Deeken*

"To establish a substantive due process violation, [plaintiff] must demonstrate that a fundamental right was violated and that [Deeken's] conduct shocks the conscience." <u>Folkerts</u>, 707 F.3d at 980; <u>see</u> <u>Moran</u>, 296 F.3d at 647 ("[S]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (internal quotations omitted) (quoted case omitted). "In order to 'shock the conscience,' it is not enough that the government official's behavior meets the 'lowest common denominator of customary tort liability.'" <u>White</u>, 696 F.3d at 757 (quoting <u>Lewis</u>, 523 U.S. at 848-49). "Rather, 'conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" <u>Id.</u> (quoting <u>Lewis</u>, 523 U.S. at 849). "Only the most severe violations of individual rights that result from the 'brutal and inhumane abuse of official power' rise to this level." <u>Id.</u> (quoting <u>C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347</u>, 591 F.3d 624, 634 (8th Cir. 2010)). "Whether conduct shocks the conscience is a question of law." <u>Folkerts</u>, 707 F.3d at 980 (cited case omitted).

As a preliminary matter, Deeken's reliance on <u>Kiesling</u>, 859 F.3d 529, and <u>Messerschmidt</u>, 565 U.S. 535, is inapposite. In <u>Messerschmidt</u>, the Supreme Court established a framework to guide the qualified immunity analysis "where an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant." <u>Kiesling</u>, 859 F.3d at 533. Plaintiff's claims are not brought under the Fourth Amendment and there are no allegations concerning a search or seizure conducted pursuant to a warrant in this case. Deeken cites no authority to support the proposition that <u>Kiesling</u> is applicable here.

Plaintiff's citation to <u>Albright</u>, 510 U.S. 266, however, has merit. In <u>Albright</u>, a plurality of the Supreme Court held that a state prosecution without probable cause does not violate substantive due process rights. <u>Id.</u> at 273-75. Plaintiff alleges Deeken violated his substantive due process rights when he falsely averred in the probable cause statement that Mr. Smith's car was slowing down, and when he omitted key facts that, had they been included, would have caused the state court judge to refuse to issue an arrest warrant. Plaintiff thus asserts a liberty interest to be free from criminal prosecution except upon probable cause, and in essence alleges the malicious initiation of a baseless criminal prosecution against him.[11] The Supreme Court's holding in <u>Albright</u> precludes the assertion of a substantive due process claim based on malicious prosecution, and precludes a substantive due process claim based on Deeken's alleged inclusion of a false statement and omission of other material facts from the probable cause statement. Plaintiff therefore fails to state a claim upon which relief can be granted against Deeken.

---

[11]Because plaintiff was arrested with legal process, his claims are analogous to claims of malicious prosecution. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 389-90 (2007); <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994). Unsurprisingly, plaintiff also asserts a state law malicious prosecution claim.

The en banc Eighth Circuit Court of Appeals has explained that in <u>Albright</u>, the Supreme Court declined to decide whether defendants have a Fourth Amendment right against malicious prosecution, but did hold that malicious prosecution does not violate the right to substantive due process, because "pretrial deprivations [a]re better addressed under the Fourth Amendment and not substantive due process." <u>Moran</u>, 296 F.3d at 646-47 (citing Albright, 510 U.S. at 274-75); <u>see also</u> <u>Albright</u>, 510 U.S. at 283 (Kennedy, J., concurring). The <u>Moran</u> decision "distinguishes <u>Albright</u> and holds the Fourth Amendment does not preclude recognizing a substantive due process violation where law enforcement officers *go beyond mere prosecution without probable cause* and fabricate evidence in order to '*falsely formulate a pretense of probable cause.*'" <u>Harrington v City of Council Bluffs, Iowa</u>, 678 F.3d 676, 680 (8th Cir. 2012) (emphases added) (quoting <u>Moran</u>, 296 F.3d at 647).

Here, plaintiff does not allege that Deeken fabricated evidence to falsely formulate a pretense of probable cause. Plaintiff admits the probable cause statement as written contained "sufficient indicia of probable cause for an arrest warrant to issue." (Doc. 48 at 8.) Although plaintiff alleges the probable cause statement falsely states Mr. Smith's car was slowing down, this allegedly false statement was neither necessary nor material to the probable cause determination in light of material, unchallenged allegations in the probable cause statement, such as that plaintiff announced during the police chase he was "going to kill this motherfucker, don't you know it," and subsequently fired five shots that struck and killed Mr. Smith. <u>See</u> <u>Winfrey v. Rogers</u>, 901 F.3d 483, 494-95 (8th Cir. 2018) (Fourth Amendment rights are not violated by the knowing or reckless inclusion of false statements in support of a warrant unless "the allegedly false statement is necessary to the finding of probable cause." (quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)). Therefore, the Court concludes the knowing inclusion of an immaterial false statement in a probable cause statement cannot constitute the manufacture or fabrication of evidence. <u>See</u> <u>id.</u> Further, the

knowing inclusion of an immaterial false statement in a probable cause statement cannot form the basis for a substantive due process claim because plaintiff cannot show either that a fundamental right was violated, or that Deeken's conduct shocks the conscience. See Folkerts, 707 F.3d at 980 (elements of substantive due process claim).

Plaintiff's substantive due process claim against Deeken overwhelmingly focuses on the alleged intentional omission of relevant facts from the probable cause statement. Because the complaint is devoid of allegations of fabricated evidence, the exception that Moran carved out to Albright's holding does not support plaintiff's assertion of a substantive due process violation. Similarly, Livers v. Schenck does not support plaintiff's claim against Deeken. See Livers, 700 F.3d at 362 (affirming denial of qualified immunity on claims of fabrication of evidence, false arrest, coerced confession, and conspiracy to violate civil rights; reversing denial of qualified immunity on Fifth Amendment due process claims and alleged failures to disclose exculpatory evidence).[12]

Plaintiff also relies on Akins v. Epperly to support his substantive due process claim against Deeken. In Akins, the plaintiff alleged the defendant police officers failed to conduct an adequate investigation before arresting, charging, and detaining him. 588 F.3d at 1182. The Eighth Circuit held that to establish a due process violation in this context, a plaintiff must show that a police officer "intentionally or recklessly failed to investigate, thereby shocking the conscience." Id. at 1184 (quotation omitted). This is a question of law to which courts apply a rigorous standard. Johnson v. Moody, 903 F.3d 766, 773 (8th Cir. 2018). "[T]he following circumstances indicate

---

[12]In Livers v. Schenck, police officers were alleged to have violated the defendants' substantive due process rights by utilizing unconstitutionally coercive interrogation techniques, conspiring to fabricate evidence by planting blood evidence in a car belonging to a defendant's brother, coercing an individual into falsely implicating the defendants, and attempting to coerce another individual into falsely saying that one defendant admitted the murders. 700 F.3d at 352-55.

reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." Id.

Plaintiff points to the second circumstance indicative of reckless failure to investigate–the purposeful ignoring of evidence of innocence–but the instant case is readily distinguishable from Akins and other substantive due process failure to investigate cases, because the complaint does not allege facts tending to show that Deeken failed to investigate. Plaintiff instead alleges the existence of a thorough investigation in 2012 of which Deeken was aware, that did not result in the filing of charges. The reckless failure to investigate standard is therefore inapplicable to plaintiff's claim against Deeken.

Plaintiff does not cite any case in which a substantive due process violation was found based on the omission of exculpatory facts from a probable cause statement. As discussed above, the Court finds that plaintiff's claim is properly construed as one for malicious prosecution, and is barred by the Supreme Court's holding in Albright. The Court will therefore grant Deeken's motion to dismiss plaintiff's § 1983 substantive due process claim for failure to state a claim upon which relief can be granted.

### ii. In the Alternative, Deeken is Entitled to Qualified Immunity

In the alternative, the Court will assume for purposes of this opinion, without deciding, that a substantive due process claim may be based on the purposeful inclusion of an immaterial false statement in and the omission from a probable cause statement of evidence suggesting a defendant's innocence. Under this assumption, the Court concludes as a matter of law that the complaint's allegations against Deeken, viewed in the light most favorable to plaintiff, do not rise to the level

of conscience-shocking conduct and Deeken is therefore entitled to qualified immunity.  See Folkerts, 707 F.3d at 980 (whether conduct shocks the conscience is a question of law).

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Stepnes v. Ritschel, 663 F.3d 952, 960 (8th Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  The doctrine "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam)).  Whether an officer may be personally liable for an official act "generally turns on the 'objective legal reasonableness' of the [officer's] action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

Deeken is entitled to qualified immunity unless he (1) violated one of plaintiff's federal constitutional or statutory rights, (2) that was clearly established at the time of the violation, such that a reasonable official in Deeken's position would have known he was violating that right.  See Livers, 700 F.3d at 350 (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)); accord Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.  To prevail on his motion to dismiss, Deeken must show that he is entitled to qualified immunity on the face of the complaint.  Kiesling, 859 F.3d at 533 (quoted case omitted).  The exhibits attached to plaintiff's complaint, the state court criminal complaint and probable cause statement, are part of the complaint for this purpose.  Id.

The complaint does not challenge the truth of the probable cause statement's allegations that plaintiff and his partner engaged in a high-speed chase of Mr. Smith's vehicle, during which plaintiff shot at Mr. Smith's vehicle and stated he was "going to kill this motherfucker, don't you know it"; plaintiff ordered his partner to hit Mr. Smith's crashed vehicle; and plaintiff went to the side of the vehicle and shot Mr. Smith five times, killing him.

Under these circumstances, Deeken's allegation in the probable cause statement that Mr. Smith's car was slowing down, and the omission therefrom of the facts alleged in the complaint, including that plaintiff stated he had observed a gun in Mr. Smith's car, Mr. Smith struck two vehicles in leaving the Church's Chicken lot, and plaintiff stood by Mr. Smith's vehicle for fifteen seconds before opening fire, does not constitute a violation of plaintiff's personal rights "so severe and disproportionate to the need presented," and "so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Moran, 296 F.3d at 647 (quotation omitted) (quoted case omitted). In addition, the complaint does not allege conduct "intended to injure in some way unjustifiable by any government interest." Lewis, 523 U.S. at 849. Deeken as a law enforcement officer has an official government interest in seeing that those suspected of committing criminal offenses are charged.

The Court therefore concludes as a matter of law that a factfinder could not reasonably infer Deeken's actions, in stating that Mr. Smith's car was slowing down and omitting from the probable cause statement the facts identified in the complaint, shock the conscience. As a result, in the alternative, Deeken's motion to dismiss plaintiff's § 1983 substantive due process claim in Count I on the basis of qualified immunity will be granted.

2. *Malicious Prosecution Claim - Count IV*

In Count IV, plaintiff asserts a state law malicious prosecution claim against Deeken based on his execution of the "false and misleading" probable cause statement. Plaintiff alleges Deeken was familiar with the findings of earlier investigations from which prosecutors determined no prosecution was warranted, that Deeken disliked plaintiff and bore him ill will for reasons unrelated to the killing of Mr. Smith, and that Deeken attested to the false and misleading statement of probable cause with malice, i.e., for the purpose other than bringing an offender to justice. Complaint, ¶¶ 116-17.

a. <u>The Parties' Arguments</u>

Deeken moves to dismiss the malicious prosecution claim for failure to state a claim upon which relief can be granted, and on the basis of official immunity under Missouri law. Deeken asserts that plaintiff fails to state a claim because the complaint shows probable cause existed for plaintiff's prosecution, as it acknowledges that plaintiff killed Mr. Smith with five shots from his service weapon, complaint ¶ 13, and the probable cause statement states that shortly before the shooting, plaintiff announced he was "going to kill this motherfucker, don't you know it," and that only plaintiff's DNA was on the gun found in Mr. Smith's car. (Doc. 15-1 at 3.) Deeken asserts that plaintiff's statement he was going to kill Mr. Smith shortly before firing five shots at him is alone sufficient to establish probable cause for a murder prosecution, and the absence of Mr. Smith's DNA on the weapon recovered from his vehicle tends to rebut plaintiff's claim that Mr. Smith had been handling the weapon while in the parking lot of Church's Chicken. Deeken also asserts that plaintiff fails to identify any statements in the probable cause statement that were both material and false, as the statement Mr. Smith was "slowing to a stop" prior to plaintiff exiting the police vehicle has no bearing on whether his use of force was justified.

Deeken also asserts that plaintiff has not adequately alleged he was motivated by malice and improper motive, as plaintiff makes only the conclusory allegation that Deeken "disliked and Bore [sic] ill will toward" plaintiff, complaint, ¶ 117, and does not plead facts tending to show Deeken had an illegitimate motive for the prosecution, or knowingly acted with flagrant disregard for plaintiff's rights so that an improper motive may be inferred. Deeken also asserts that because the facts alleged in the complaint indicate probable cause existed for plaintiff's prosecution, the allegation Deeken "disliked" plaintiff is immaterial and will not defeat a motion to dismiss.

Finally, Deeken asserts the malicious prosecution count should be dismissed because he is protected by the Missouri doctrine of official immunity, under which public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions. Deeken states that Missouri cases hold investigating a crime is a discretionary function, and asserts that plaintiff fails to allege facts to demonstrate he acted with bad faith or malice to render official immunity inapplicable.

Plaintiff responds that his complaint alleges facts establishing there was no probable cause for his prosecution, as the totality of the circumstances would not lead a prudent person to believe that he committed a crime in connection with Mr. Smith's death, and his acquittal itself serves as additional evidence of a lack of probable cause. Plaintiff states that a police officer can be held liable for malicious prosecution when the probable cause affidavit contained false information and resulted in the issuance of an arrest warrant. Plaintiff asserts that the attestation Mr. Smith's car was slowing to a stop suggests Mr. Smith had an intention to surrender at odds with the notion that he reached for his gun when confronted by plaintiff, and the probable cause affidavit "was false by virtue of its gross *omissions* of facts" well known to Deeken, that any reasonable person would

recognize as facts a judge would wish to know in determining the existence of probable cause. (Doc. 48 at 14.)

Plaintiff further responds that Deeken is not entitled to official immunity because the doctrine does not apply to acts committed in bad faith or with malice. The complaint alleges that Deeken acted maliciously when he intentionally misrepresented facts in and made material omissions from the probable cause statement, in order to secure plaintiff's wrongful arrest and prosecution.

Deeken replies that plaintiff has effectively conceded there was probable cause he murdered Mr. Smith, and his response fails to offer any counter to the argument that plaintiff's announcing he was going to kill Mr. Smith and then doing so constitutes probable cause. Deeken asserts that plaintiff merely argues other circumstances indicate he fired in self defense, which is insufficient to support a malicious prosecution claim. Deeken further asserts that the complaint's bare allegation he initiated a prosecution against plaintiff for an improper purpose is a mere conclusion and is devoid of factual details that "nudge his claim of malice 'across the line from conceivable to plausible.'" (Doc. 52 at 4, quoting Twombly, 550 U.S. at 670).

b. Discussion

"To establish a prima facie claim for malicious prosecution, a party must plead and prove six elements: (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor, (4) lack of probable cause for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit." State ex rel. O'Basuyi v. Vincent, 434 S.W.3d 517, 519 (Mo. 2014) (en banc) (citing Edwards v. Gerstein, 237 S.W.3d 580, 582-83 (Mo. 2007) (en banc)). "Malicious prosecution actions are not favored in the law as public policy supports uncovering and prosecuting

crime. As such, courts require strict compliance with the requisite elements." <u>Copeland v. Wicks</u>, 468 S.W.3d 886, 889 (Mo. 2015) (en banc) (internal citation and cited case omitted). Deeken's motion to dismiss challenges the sufficiency of the complaint's allegations as to elements four and five, lack of probable cause and malice.

### i. Probable Cause Element

Under Missouri law, the test for determining whether "a malicious prosecution defendant possessed probable cause to instigate an underlying criminal proceeding asks whether the facts and circumstances would warrant a belief in an ordinarily cautious person that another had committed a crime." <u>Zike v. Advance America, Cash Advance Centers of Mo., Inc.</u>, 646 F.3d 504, 509-10 (8th Cir. 2011) (quoting <u>Williams v. Ryder/P.I.E. Nationwide, Inc.</u>, 786 F.2d 854, 857 (8th Cir. 1986) (quoting <u>Dodson v. MFA Ins. Co.</u>, 509 S.W.2d 461, 467 (Mo. 1974)). "It is enough for the officer to show there was 'merely arguable probable cause,' which is a mistaken, but objectively reasonable belief, that the suspect committed a criminal offense." <u>Copeland</u>, 468 S.W.3d at 891 (quoting <u>Dowell v. Lincoln Cnty., Mo.</u>, 762 F.3d 770, 777 (8th Cir. 2014)).

"[W]here the facts of a malicious prosecution claim are undisputed"—as is the case here because the Court accepts the complaint's factual allegations as true—whether Deeken "possessed probable cause 'is a question of law for the court, not a question of fact for the jury.'" <u>Id.</u> (quoting <u>State ex rel. Police Ret. Sys. of St. Louis v. Mummert</u>, 875 S.W.2d 553, 555 (Mo. 1994) (en banc)). "[C]ertain circumstances constitute prima facie evidence of a malicious-prosecution defendant's probable cause and consequently trigger a rebuttable presumption that a defendant had probable cause to initiate the underlying criminal proceedings." <u>Zike</u>, 646 F.3d at 510. The Missouri Supreme Court "has recognized three scenarios that independently amount to prima facie evidence of a malicious-prosecution defendant's probable cause to have commenced criminal proceedings

against the plaintiff: (1) the original charging instrument is a grand jury's indictment; (2) the original charging instrument is a prosecuting attorney's sworn complaint or information, based on his own information and belief; or (3) an examining magistrate's finding of probable cause at a preliminary hearing, and subsequent 'binding over' of the defendant for trial." Zike, 646 F.3d at 510 (citing Moad v. Pioneer Fin. Co., 496 S.W.2d 794, 798-99 (Mo. 1973)).

The third scenario is met in this case, as the state court judge found probable cause at a preliminary hearing where the probable cause statement was presented, and issued a warrant for plaintiff's arrest. This constitutes prima facie evidence of Deeken's probable cause, which plaintiff bears the burden to rebut. Id. at 510 (citing Kvasnicka v. Montgomery Ward & Co., 166 S.W.2d 503, 505 (Mo. 1942)).[13] The prima facie presumption of probable cause may be overcome by showing that the judge's finding was procured through false or fraudulent testimony, or other improper means. Zike, 646 F.3d at 510-11; Huffstutler v. Coates, 355 S.W.2d 70, 75 (Mo. 1960).

The Court therefore considers whether the complaint's allegations, that Deeken's probable cause statement (1) falsely stated Mr. Smith's car was slowing down, and (2) omitted facts necessary for a fair and complete basis for determining whether there was probable cause to believe plaintiff murdered Mr. Smith, serve to overcome the prima facie presumption of probable cause by plausibly alleging the arrest warrant's issuance was procured through false testimony or other improper means.

---

[13]Plaintiff's acquittal of first-degree murder following a bench trial does not rebut the prima facie case of probable cause established by the state court judge's finding of probable cause at the preliminary hearing. See Moad, 496 S.W.2d at 799 (quoting Harper v. St. Joseph Lead Co., 233 S.W.2d 835, 840 (Mo. 1950)).

The Court finds the averment in the probable cause statement that Mr. Smith's car was slowing to a stop as plaintiff ordered his partner to "[h]it him right now," though inconsistent with the complaint's allegation that Mr. Smith had crashed his car before plaintiff gave this direction, was immaterial to the state court judge's probable cause determination and is therefore insufficient to overcome the prima facie presumption of probable cause. The complaint alleges that after traveling at high speed and failing to brake, "Mr. Smith crashed his car into the curb on the far side of the road, striking it with force sufficient to flatten both of the car's driver-side tires and break its front axle," but because plaintiff did not know the extent of damage to the car, he instructed his partner to strike it with the police car. Complaint ¶ 12. Thus, it is undisputed that Mr. Smith's car came to a stop, and plaintiff ordered his partner to drive into it. While a qualitative distinction exists between Mr. Smith's vehicle slowing to a stop, as opposed to crashing to a stop, the distinction is immaterial in the context of the probable cause statement's primary allegations that plaintiff engaged in a high-speed pursuit of Mr. Smith's vehicle, shot at the vehicle during the chase, stated during the chase that he was "going to kill this motherfucker, don't you know it," and then approached Mr. Smith's stopped car and shot five times, striking Mr. Smith with each shot and killing him.

With respect to the malicious prosecution claim's primary allegation, that Deeken omitted numerous facts from the probable cause statement that were necessary to provide the state court judge with a fair and complete factual basis for determining whether there was probable cause to believe Mr. Smith was murdered, "[t]he defendant in a malicious prosecution action 'is to be held responsible, not only for the facts he knew when he caused the suit to be instituted but also for all other facts pertinent to the suit which he could have ascertained by due diligence prior to causing the law to be put in motion.'" Zike, 646 F.3d at 511 (quoting Kelley v. Kelly Residential Grp., Inc., 945 S.W.2d 544, 549 (Mo. Ct. App. 1997) (quoting Haswell, 557 S.W.2d at 634)). "Still, minor

inconsistencies or omissions by a malicious prosecution defendant at a preliminary hearing do not

operate to rebut the presumption raised by an otherwise valid probable cause finding at that

hearing." Id. (citing Crow v. Crawford & Co., 259 S.W.3d 104, 116 (Mo. Ct. App. 2008) ("The

failure to provide every last piece of information in one's possession does not constitute providing

false information.")).

To properly evaluate the effect of the omissions, the Court must reconstruct the probable

cause statement with the omitted statements and then determine if they would be material to the

probable cause determination, such that if they had been included the statement would not support

a finding of arguable probable cause. See Copeland, 468 S.W.3d at 891 ("courts reconstruct the

supporting affidavit without the false statements and determine if a corrected affidavit would still

support probable cause for an arrest.").

When the probable cause statement is reconstructed to include all of the omitted information

alleged in the complaint and listed in paragraphs (a)-(j) in § B.1.a., *supra*,[14] and to adopt the

complaint's allegation that Mr. Smith's car had crashed to a stop when plaintiff ordered his partner

to hit it, it would read something like this:

> Defendant former police officer Jason Stockley and another police officer suspected
> victim Anthony Smith was conducting drug sales when he was first approached by
> defendant and his partner on a Church's Chicken lot. Defendant and his partner both
> said they saw a gun in Mr. Smith's car at the Church's Chicken lot. Mr. Smith hit
> two vehicles including defendant's police vehicle while fleeing and initiating a high
> speed chase from the Church's Chicken lot. Mr. Smith narrowly missed hitting
> defendant with his car as he drove off of the Church's Chicken lot. There was a
> warrant out for Mr. Smith's arrest, of which Smith was aware.

---

[14]The Court does not suggest or decide that every statement plaintiff claims was improperly
omitted from the probable cause statement is material or would be properly included therein. For
the limited purpose of resolving Deeken's motion to dismiss, however, the Court includes all of the
statements in the reconstructed probable cause statement.

After shooting at Mr. Smith's car at Riverview and Thekla, the defendant and the other police officer chased the victim at speeds over 80 miles per hour. The Defendant was the passenger in the police SUV. While in pursuit, the police SUV crashed, backed up, and continued following Smith's vehicle. During the pursuit, the defendant is heard saying "going to kill this motherfucker, don't you know it." The victim's car crashed to a stop but defendant did not know how badly it was damaged. At that time, the Defendant is heard telling the other police officer to "Hit him right now" at which point the driver slams the police SUV into the victim's car. The Defendant then approached the victim's car on the driver's side.

Defendant spent 15 seconds at the driver's side window of Mr. Smith's vehicle giving verbal commands which Mr. Smith ignored prior to any shots being fired. Defendant shot five times into the car, striking the victim Anthony Smith with each shot. At the time of the shooting, defendant can be seen on the police in-dash camera video jumping backwards while discharging his weapon. The victim died as a result of the gunshot wounds. Defendant stated that he thought Mr. Smith was reaching for the gun by leaning to his right. A gun was recovered from the victim's car but was later determined by lab analysis to have only the Defendant's DNA. DNA is rarely recovered from a gun.

Mr. Smith's criminal history included possession of weapons, drugs, and vehicle pursuits; he was known to carry a gun for protection; he stole guns and sold them on the street; he had prior convictions for felony gun and drug charges; and he repeatedly led police on high speed chases since being released from prison seven months earlier.

The Court concludes as a matter of law, see Police Ret. Sys., 875 S.W.2d at 555, that the probable cause statement as reconstructed would objectively support a finding of *arguable* probable cause that plaintiff had committed a criminal offense. Considering the totality of the circumstances, the most significant allegations are that in carrying out his official police duties, plaintiff engaged in a high-speed chase of Mr. Smith's vehicle, shot at the vehicle on city streets, stated during the chase that he was "going to kill this motherfucker, don't you know it," ordered his partner to hit Mr. Smith's vehicle after it crashed to a stop, and after spending just fifteen seconds at Mr. Smith's driver's side door, fired five shots at Mr. Smith, hitting him with each shot and killing him. See Missouri Revised Statutes § 565.020.1 (2010) ("A person commits the offense of murder in the first

degree if he or she knowingly causes the death of another person after deliberation upon the matter.").

As a result, the Court concludes that plaintiff cannot meet his burden to rebut the prima facie presumption created by the state court judge's probable cause finding.  See Zike, 646 F.3d at 510; Kvasnicka, 166 S.W.2d at 505.  Because plaintiff cannot plausibly allege that Deeken lacked arguable probable cause to initiate the criminal prosecution against him, plaintiff fails to state a claim for malicious prosecution upon which relief can be granted, and Deeken's motion to dismiss Count IV will be granted.

*ii. Malice Element*

The Court will also address Deeken's motion to dismiss the malicious prosecution claim on the basis that plaintiff has not adequately pleaded facts to support the fifth element, that Deeken acted with malice in initiating the prosecution.  In the context of a malicious prosecution action arising from a criminal proceeding, "To subject a person to liability for malicious prosecution, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice" and the defendant must have "acted without reasonable grounds."  Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 814 & n.4 (Mo. 1984) (en banc) (quoting Restatement of Torts (Second) § 668 (1968)).  This does not require proof of malice in fact, which requires a showing of hatred, spite, or ill will, but rather requires proof of legal malice.  Id. at 813-14.  If the malicious prosecution "defendant's purpose [for prosecuting] is otherwise proper, the addition of the incidental fact that he felt indignation or resentment toward the plaintiff will not make him liable."  Sinopole v. Morris, 743 S.W.2d 81, 85 (Mo. Ct. App. 1987) (citing Sanders, 682 S.W.2d at 814).

The complaint alleges that Deeken was once plaintiff's police supervisor, "demonstrated animosity toward" plaintiff, and "disliked and Bore [sic] ill will toward" him.  Complaint ¶¶ 7, 117.

These allegations are conclusory and concern malice in fact, which is not at issue in an action for malicious prosecution arising from a criminal proceeding. See Sanders, 682 S.W.2d at 813-14. The complaint alleges a bare legal conclusion that Deeken filed the probable cause statement primarily for a purpose other than that of bringing an offender to justice, i.e., that he acted with legal malice, Complaint ¶ 117, but this conclusion is not supported by any facts to plausibly allege that Deeken acted for a purpose other than that of bringing an offender to justice, or that he acted without reasonable grounds. As a result, it is not entitled to be accepted as true on a motion to dismiss. See Iqbal, 556 U.S. at 678. The Court concludes plaintiff does not plausibly allege that Deeken acted with legal malice in initiating the criminal prosecution. Plaintiff therefore fails to state a claim for malicious prosecution upon which relief can be granted, and Deeken's motion to dismiss Count IV will be granted.

Because the Court concludes that plaintiff fails to state a claim upon which relief can be granted in Count IV, it does not reach Deeken's argument that his actions are protected by the Missouri official immunity doctrine. At the end of plaintiff's opposition memorandum, he requests that if the Court decides to grant Deeken's motion to dismiss, he be granted time to "tender a proposed amended complaint to the Court, together with a motion requesting leave to file that pleading." (Doc. 48 at 15.) This request is denied. The Eighth Circuit has held that "to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion." Wolgin v. Simon, 722 F.2d 389, 395 (8th Cir. 1983); see also United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 742 (8th Cir. 2014). Here, plaintiff did not file a motion for leave to amend or a proposed amendment, nor does he indicate what a proposed amended pleading might contain. The Eighth Circuit has often held that under circumstances such as these, district courts do not abuse their discretion in dismissing a plaintiff's claims without affording an opportunity to

amend to supply more particularized allegations. See, e.g., Park Imrat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 519 (8th Cir. 2018); Glickert v. Loop Trolley Trans. Devel. Dist., 792 F.3d 876, 880 (8th Cir. 2015); In re 2007 Novastar Financial, Inc., Secs. Litig., 579 F.3d 878, 884-85 (8th Cir. 2009).

C. Defendant City of St. Louis - Monell Liability

    1. *The Parties' Arguments*

Defendant City of St. Louis (the "City") moves to dismiss plaintiff's § 1983 claims in Count I for failure to state a claim upon which relief can be granted. The City argues plaintiff does not plausibly allege a substantive due process claim, but in essence alleges he is innocent and should never have been charged with murder. The City also argues Count I contains no factual allegations regarding it and otherwise fails to state a claim for municipal liability. The City also asserts that it cannot be held liable under § 1983 on the basis of *respondeat superior*, citing Monell, 436 U.S. at 691.

The City moves to dismiss Count II, titled "Violation of 42 U.S.C. § 1983 (*Monell*)" for failure to state a claim upon which relief can be granted, asserting that plaintiff fails to plausibly allege the City had an official policy or unofficial custom that caused plaintiff to be deprived of any constitutional right. The City also asserts that plaintiff fails to state a claim under Pembaur v. City of Cincinnati, 475 U.S.469 (1986), because defendant Joyce's decision to prosecute plaintiff was a discretionary decision made in the exercise of her function as a prosecutor, and not a "policy," i.e., a "deliberate choice of a guiding principle or procedure made by the municipal official who as final authority regarding such matters," citing Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).

The City moves to dismiss plaintiff's § 1983 claims asserted against defendants Joyce and Deeken in their official capacities as being duplicative of plaintiff's identical claims against the City,

citing <u>Robb v. Hungerbeeler</u>, 370 F.3d 735, 739 (8th Cir. 2004) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)).

Finally, the City moves to dismiss plaintiff's official-capacity state law claims for defamation and malicious prosecution in Counts III and IV, asserting that they are barred by sovereign immunity under Missouri law, citing § 537.600, Missouri Revised Statutes, and various Missouri cases.

Plaintiff responds that he states a § 1983 claim in Count I for deprivation of his substantive due process rights to be free from reckless investigation and the use of false evidence by law enforcement officials, and the "investigative and administrative conduct he attributes to Ms. Joyce and the testimonial shenanigans of Lt. Deeken at her instance." (Doc. 43 at 9.) Plaintiff responds that he states a <u>Monell</u> claim against the City in Count II under <u>Pembaur</u>, because the practices and policies described in his complaint and listed in his opposition memorandum were "known to and condoned and ratified by Ms. Joyce as the City's final policymaker in criminal cases, and thus constituted the official policy and practice of the municipality." (Doc. 43 at 6, 7-9.)

Plaintiff does not respond to the City's arguments for dismissal of the official capacity claims against Joyce and Deeken as duplicative, or to the City's arguments that the official-capacity defamation and malicious prosecution state law claims are barred by sovereign immunity.

The City replies that plaintiff's complaint fails to plausibly allege the deprivation of a constitutional right against either Joyce or Deeken, and therefore his claim for municipal liability fails as well. The City further replies that the complaint lacks any allegations tending to show the it had an official policy or a persistent and widespread practice or custom that caused plaintiff's alleged constitutional deprivation, and instead "merely sets forth a laundry list of alleged wrongs

committed by Deeken and Joyce." (Doc. 50 at 4.) The City asserts that because it cannot be held vicariously liable for Joyce or Deeken's actions for purposes of § 1983 liability, the alleged wrongdoings of Joyce and Deeken are insufficient to state a claim against it for municipal liability, citing Connick v. Thompson, 563 U.S. 51, 60 (2011). Finally, the City replies that Pembaur liability is inapplicable under the allegations of the complaint, because Joyce's decision to prosecute plaintiff was not an official government "policy," but rather was a discretionary decision based on the unique facts and evidence surrounding plaintiff's shooting of Mr. Smith.

2. *Discussion*

a. Official-Capacity Claims

As a preliminary matter, the Court addresses the City's motion to dismiss plaintiff's official-capacity claims against Joyce and Deeken as duplicative of his claims against the City. A suit against a public official in his or her official capacity is actually a suit against the public entity for which the official is an agent. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Thus, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. Hafer v. Melo, 502 U.S. 21, 25 (1991); see also Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); Kelly v. City of Omaha, Neb., 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official . . . capacities sues only the public employer").

Plaintiff has not offered any opposition to the City's motion to dismiss his official-capacity claims. This Court has held that "[i]t is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the officer's governmental employer." Caruso v. City of St. Louis, 2016 WL 6563472, at *1 (E.D. Mo.

Nov. 4, 2016) (citing <u>Veatch v. Bartels Lutheran Home</u>, 627 F.3d 1254, 1257 (8th Cir. 2010)). Plaintiff's official-capacity claims against Joyce and Deeken are duplicative of the claims against the City. As a result, the Court will grant the City's motion to dismiss the official-capacity claims against Joyce and Deeken.

b. <u>Section 1983 Liability</u>

For § 1983 liability to attach to a governmental entity in an official capacity suit, the plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. <u>Mick v. Raines</u>, 883 F.3d 1075, 1089 (8th Cir. 2018). Municipal liability under § 1983 also attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur</u>, 475 U.S. at 481-84.

As discussed *supra*, plaintiff fails to state a claim under § 1983 for substantive due process violations based on the conduct of either defendant Joyce or defendant Deeken. Pursuant to <u>Monell</u>, "[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . an 'official municipal policy.'" <u>Corwin v. City of Independence</u>, 829 F.3d 695, 699 (8th Cir. 2016) (quoting <u>Monell</u>, 436 U.S. at 691. "It follows that, absent a constitutional violation by a city employee, there can be no § 1983 or <u>Monell</u> liability for the City. <u>See</u> <u>Malone v. Hinman</u>, 847 F.3d 949, 955 (8th Cir. 2017) ('Because we conclude that Officer Hinman did not violate Malone's constitutional rights, there can be no § 1983 or <u>Monell</u> liability on the part of Chief Thomas and the City.'); <u>Sitzes v. City of W. Memphis</u>, 606 F.3d 461, 470 (8th Cir. 2010) (agreeing with district court that plaintiffs' claims 'could not be sustained absent an underlying constitutional violation by the officer'); <u>Sanders v. City of Minneapolis</u>, 474 F.3d 523, 527 (8th Cir. 2007)

('Without a constitutional violation by the individual officers, there can be no § 1983 or <u>Monell</u> . . . municipal liability.).' <u>Whitney v. City of St. Louis, Mo.</u>, 887 F.3d 857, 860-61 (8th Cir. 2018). Accordingly, the Court will grant the City's motion to dismiss plaintiff's § 1983 and <u>Monell</u> claims against it in Counts I and II for failure to state a claim upon which relief can be granted.

### c. <u>State Law Tort Claims for Defamation and Malicious Prosecution</u>

As discussed *supra*, the Court concludes plaintiff fails to state a claim upon which relief can be granted against defendant Joyce for defamation in Count III, and against defendant Deeken for malicious prosecution in Count IV. Because plaintiff fails to state a claim upon which relief can be granted as to the individual defendants, the City is also entitled to dismissal under Rule 12(b)(6) of plaintiff's official capacity tort claims for defamation and malicious prosecution.

Further, the City is entitled to sovereign immunity on these claims. "Sovereign immunity is not a defense to suit but, rather, it is immunity from tort liability altogether[.]" <u>Newsome v. Kansas City, Mo. Sch. Dist.</u>, 520 S.W.3d 769, 775 (Mo. 2017) (en banc) (quoting <u>State ex rel. City of Grandview v. Grate</u>, 490 S.W.3d 368, 369 (Mo. 2016) (en banc)). "[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" <u>Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors</u>, 476 S.W.3d 913, 921-22 (Mo. 2016) (en banc). "Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case." <u>Newsome</u>, 520 S.W.3d at 776 (quoted case omitted).

Section 537.600, Missouri Revised Statutes, provides that Missouri public entities, including municipal corporations, are entitled to sovereign immunity as it existed at common law prior to September 12, 1977, unless that immunity is waived, abrogated, or modified by statute. <u>Metro. St. Louis Sewer Dist.</u>, 476 S.W.3d at 921; <u>see Richardson v. City of St. Louis</u>, 293 S.W.3d 133, 136

(Mo. Ct. App. 2009) (municipal corporations are public entities under § 537.600).  A suit against a government employee in his or her official capacity is equivalent to a suit against the government entity itself, and sovereign immunity therefore also applies with equal force in the context of official-capacity claims.  <u>Fischer v. Steward</u>, 2010 WL 147865, at *11 (E.D. Mo. Jan. 11, 2010) (citing <u>Betts-Lucas v. Hartmann</u>, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002)).

Missouri municipalities were not entitled to full sovereign immunity at common law, and under § 537.600 are entitled to sovereign immunity with respect to governmental but not proprietary functions.  <u>Southers v. City of Farmington, Mo.</u>, 263 S.W.3d 603, 609 (Mo. 2008) (en banc). "Nonetheless, finding a municipality liable for torts is the exception to the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity."  <u>Parish v. Novus Equities Co.</u>, 231 S.W.3d 236, 242-43 (Mo. Ct. App. 2007) (cited case omitted).

As previously stated, plaintiff offers no opposition to the City's motion to dismiss on the basis of sovereign immunity.  The complaint does not plead any facts to establish that plaintiff's claims fall within an exception to sovereign immunity.[15]  Courts look to the nature of the activity performed to determine in which capacity a municipality has acted for sovereign immunity purposes. <u>Id.</u> at 243.  A function is governmental if it is "performed for the common good of all," while a proprietary function is one "performed for the special benefit or profit of the municipality acting as

---

[15]"A municipality is completely immune from liability arising from its performance of acts classified as governmental functions, unless a specific exception applies or the municipality specifically waives the immunity.  Section 537.600.1(1) (municipalities have no immunity from suit when a plaintiff's injuries result from a public employee's negligent operation of a motor vehicle with the course of employment); Section 537.600.1(2) (municipalities have no immunity from suit when a plaintiff's injuries were caused by the dangerous condition of the municipality's property); <u>Junior Coll. Dist. of St. Louis</u>, 149 S.W.3d at 447; <u>Aiello</u>, 830 S.W.2d at 558."  <u>Parish v. Novus Equities Co.</u>, 231 S.W.3d 236, 242 (Mo. Ct. App. 2007).

a corporate entity." Jungerman v. City of Raytown, 925 S.W.2d 202, 204 (Mo. 1996) (en banc), abrogated on other grounds by Southers, 263 S.W.3d 603.

Here, the City as a municipality performs governmental functions in enforcing laws and ordinances and keeping the peace by providing a prosecutor's office and police department. See Fischer, 2010 WL 147865, at *12 (citing Parish, 231 S.W.3d at 242). The City is therefore insulated by sovereign immunity from plaintiff's tort claims arising from Joyce and Deeken's actions, as they were acting as the City's agents in carrying out governmental functions with respect to the claims asserted.

For the foregoing reasons, the City's motion to dismiss will be granted in all respects. Plaintiff's request in the body of his opposition memorandum to file an amended complaint against the City in the event the Court grants the motion to dismiss will be denied. Plaintiff did not file a motion for leave to amend or a proposed amendment, nor does he indicate how a proposed amended pleading might correct the deficiencies of his complaint. See, e.g., Park Imrat Drug Corp., 911 F.3d at 519 (8th Cir. 2018).

## IV. Conclusion

In sum, for the reasons discussed above, the Court will grant defendant Joyce's individual capacity motion to dismiss plaintiff's § 1983 substantive due process claims in Count I on the basis of absolute immunity as to Joyce's effective termination of the renewed police investigation, and for failure to state a claim upon which relief can be granted as to Joyce's statements to the media and public. The Court will grant Joyce's motion to dismiss plaintiff's state law defamation claim in Count III for failure to state a claim upon which relief can be granted.

The Court will grant defendant Deeken's motion to dismiss plaintiff's § 1983 substantive due process claim in Count I for failure to state a claim upon which relief can be granted and, in the

alternative, on the basis of qualified immunity. The Court will also grant Deeken's motion to dismiss plaintiff's state law malicious prosecution claim in Count IV for failure to state a claim upon which relief can be granted.

The Court will grant the City of St. Louis's motion to dismiss as duplicative the official-capacity claims asserted against defendants Joyce and Deeken; will grant the motion to dismiss plaintiff's § 1983 and Monell claims in Counts I and II for failure to state a claim upon which relief can be granted; and will grant the motion to dismiss plaintiff's official-capacity state law defamation and malicious prosecution claims in Counts III and IV for failure to state a claim upon which relief can be granted, and on the basis of sovereign immunity.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Jennifer Joyce in her individual capacity's motion to dismiss is **GRANTED** as follows: (1) plaintiff's § 1983 substantive due process claim in Count I based on Joyce's effective termination of the renewed police investigation is **DISMISSED** as Joyce is entitled to absolute immunity; (2) plaintiff's § 1983 substantive due process claim in Count I based on Joyce's statements to the media and public is **DISMISSED** for failure to state a claim upon which relief can be granted; and (3) plaintiff's state law defamation claim in Count III is **DISMISSED** for failure to state a claim upon which relief can be granted. [Doc. 18]

**IT IS FURTHER ORDERED** that defendant Kirk Deeken in his individual capacity's motion to dismiss is **GRANTED** as follows: (1) plaintiff's § 1983 substantive due process claim in Count I is **DISMISSED** for failure to state a claim upon which relief can be granted and, in the alternative, on the basis of qualified immunity; and (2) plaintiff's state law malicious prosecution claim in Count IV is **DISMISSED** for failure to state a claim upon which relief can be granted. [Doc. 24]

**IT IS FURTHER ORDERED** that defendant City of St. Louis's motion to dismiss is **GRANTED** as follows: (1) plaintiff's § 1983 and state law official-capacity claims against defendants Joyce and Deeken are **DISMISSED** as duplicative of claims against the City; (2) plaintiff's § 1983 and Monell claims against the City in Counts I and II are **DISMISSED** for failure to state a claim upon which relief can be granted; and (3) plaintiff's state law claims for defamation and malicious prosecution in Counts III and IV are **DISMISSED** for failure to state a claim upon which relief can be granted, and on the basis of sovereign immunity. [Doc. 26]

**IT IS FURTHER ORDERED** that an appropriate order of dismissal will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  14th  day of February, 2019.